# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC. § § § § *Plaintiffs,* § § v. § § YELLOW JACKET OIL TOOLS, LLC, § and G&H DIVERSIFIED § MANUFACTURING, LP § § *Defendants.* | Civil Action No. 6:20-CV-01110-ADA  Jury Trial Demanded |

## DEFENDANTS' RENEWED MOTION TO DISMISS PLAINTIFFS' CLAIMS OR ALTERNATIVELY TRANSFER TO THE SOUTHERN DISTRICT OF TEXAS

i

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 1

ARGUMENT ........................................................................................................................ 3

    1.      Venue is Not Proper as to All Parties ..................................................................... 3

    2.      If Yellow Jacket is Not Dismissed, this Case Must Be Transferred to the SDTX . 5

           A.     All Private Interest Factors Favor Transfer to the SDTX ................................. 7

                i.     The Relative Ease of Access to Sources of Proof Weighs in Favor of Transfer ............................................................................................7

                      a)     Evidence from G&H ............................................................ 8

                      b)     Evidence from Third Parties ............................................... 8

                      c)     Evidence from DynaEnergetics .......................................... 8

                ii.    The Availability of Compulsory Process to Secure Attendance of Witnesses Favors Transfer ............................................................9

                iii.   The Cost of Attendance for Willing Witnesses Favors Transfer to the SDTX ....................................................................................10

                iv.    All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive Weigh in Favor of Transfer ...........12

           B.     The Public Interest Factors Also Favor Transfer to the SDTX ...................... 13

                i.     Southern District of Texas' Localized Interest Weighs in Favor of Transfer .....................................................................................13

                ii.    Administrative Difficulties Related to Court Congestion Is Likely Neutral ........................................................................................14

                iii.   The Remaining Public Interest Factors are Neutral .......................15

           C.     Taken Together, the § 1404(a) Convenience Factors Favor Transfer to the SDTX ........................................................................................................... 15

CONCLUSION .................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**

*Bollore S.A. v. Import Warehouse, Inc.*
   448 F.3d 317, 325 (5th Cir. 2006)..................................................................................4

*Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*
   260 S.W.3d 67, 82 (Tex. App.—Houston [1st Dist.] 2008, no pet.) .................4

*Fintiv Inc. v. Apple Inc.*
   2019 WL 4743678...........................................................................................................7

*G&H Diversified Mfg. v. DynaEnergetics Europe*
   No. 3:20-cv-00376 (S.D. Tex. Mar. 8, 2021),................................................................5

*GeoTag, Inc. v. Starbucks Corp.*,
   2013 U.S. Dist. LEXIS 58575 (E.D. Tex. Jan. 14, 2013)..................................9

*Hargrave v. Fibreboard Corp.*
   710 F.2d 1154, 1160 (5th Cir. 1983)................................................................................4

*In re Acer America Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010).......................................................................13

*In re BigCommerce, Inc.*,
   890 F.3d 978 (Fed. Cir. 2018)...........................................................................6

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009).......................................................................14

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008).......................................................................14

*In re Volkswagen of Am., Inc.*
   545 F.3d 304, 315 (5th Cir. 2008) (en banc).............................................. 7, 13

*In re Apple Inc.*
   979 F.3d 1332, 1340 (Fed. Cir. 2020)...............................................................7

*Interactive ToyBox, LLC v. The Walt Disney Company et al*
    2018 WL 5284625, at *4 (W.D. Tex., 2018). .................................................4, 5

*Kuster v. Western Digital Tech., Inc.*
    No. 6:20-cv-00563-ADA (W.D. Tex. February 9, 2021). ................................7

*Licea v. Curacao Drydock Co.*
    952 F.3d 207, 213 (5th Cir. 2015) ....................................................................4

*Mission Insurance Co. v. Puritan Fashions Corp.*
    706 F.2d 599, 602-03 (5th Cir. 1983) ..............................................................7

*Odom v. Microsoft Corp.*,
    596 F. Supp. 2d 995 (E.D. Tex. 2009) ............................................................14

*PHCMinden, L.P. v. Kimberly-Clark Corp.*
    235 S.W.3d 163, 176 (Tex. 2007) ....................................................................4

*Stonite Products Co. v. Melvin Lloyd Co.*
    315 U.S. 561, 563-64 (1942) ............................................................................3

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017) .................................................................................5, 6

*USPC Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*,
    2011 WL 1103372 (N.D. Tex. Mar. 25, 2011) ...............................................14

## **Statutes**

28 U.S.C. § 1404(a) ...............................................................................................6, 7

28 U.S.C. § 1400(b) ...................................................................................................5

35 U.S.C. § 102(a)(1) .................................................................................................8

## INTRODUCTION

This Court should dismiss Plaintiffs DynaEnergetics Europe GmbH's and DynaEnergetics US, Inc.'s (collectively, "Plaintiffs" or "DynaEnergetics") Amended Complaint (Dkt. 17) under Fed. R. Civ. P. 12(b)(3), or in the alternative, transfer the case to the Southern District of Texas ("SDTX"), because Defendant Yellow Jacket Oil Tools, LLC ("Yellow Jacket") does not reside in the Western District of Texas and does not have a "regular and established place of business" anywhere in the Western District of Texas. 28 U.S.C. § 1400(b). Venue in this case is not a close call. Yellow Jacket's original motion to dismiss detailed that it does no business at all in this district and each venue fact that Plaintiff plead dealt with a different company. Dkt. 16. In an attempt to preserve venue and avoid a pending declaratory judgment action in the Southern District of Texas, Plaintiffs filed the Amended Complaint adding G&H Diversified Manufacturing, LP ("G&H") and alleging alter ego. The Amended Complaint does not fix the venue defects of the original complaint. Venue must be proper to all defendants, and venue as to Yellow Jacket is still improper. Even if venue were proper, this suit should be transferred to the SDTX because the Section 1404 factors overwhelmingly favor transfer.

## FACTUAL BACKGROUND

On December 4, 2020, Plaintiffs DynaEnergetics sued Defendant Yellow Jacket Oil Tools, LLC ("Yellow Jacket") for patent infringement of U.S. Patent No. 10,844,697 (the "'697 Patent"). Dkt. 1.

On January 29, 2021, Yellow Jacked moved to dismiss under rule 12(b)(3). Dkt. 16. As detailed in that motion, Yellow Jacket does not have any business operations, and each and every venue fact cited in the original complaint dealt with a different company, G&H. As such, Yellow Jacket does not reside in or have a "regular and established place of business" in the Western

1

District of Texas ("WDTX"). Dkt. 16 at 5 (*citing* Decl. of John Kaiser, Ex. 1 to Dkt. 16). Yellow Jacket is incorporated in the state of Texas and has a registered agent at 11927 Tanner Road, Houston, Texas, 77041. Ex. 2 (Certificate of Formation and Amendments). This is Yellow Jacket's principal and only place of business.

Faced with certain dismissal and a pending declaratory judgment action by G&H in the SDTX (the "SDTX Action"), Plaintiffs filed an Amended Complaint on February 12, 2021. Dkt. 17. The Amended Complaint adds G&H as a defendant and adds an unsupported, bare-bones, allegation that Yellow Jacket is an alter ego of G&H. *Id. at* ¶ 23; *see also id.* at ¶ 10 (alleging that the alter ego allegation cures the venue defects of the original complaint).

Plaintiffs' artful (or inartful) pleadings do not, however, change the ultimate fact that there are no facts to support venue as to Yellow Jacket. Contrary to Plaintiffs' Amended Complaint, Yellow Jacket is a holding company that does not conduct any business *at all*, let alone in this district. It does not lease any property in this district or elsewhere, it does not manufacture or sell any products, and it does not produce any revenue. Ex. 1 (Decl. of John Kaiser) at ¶¶ 7-13. Instead, Yellow Jacket is wholly owned by G&H. Ex. 2 at 6 (identifying G&H as the Sole Member). Since its formation in 2015, Yellow Jacket has not conducted any business. Ex. 1 at ¶ 7; Ex. 2 at 2.

As a result, ***every action*** that DynaEnergetics attributes to Yellow Jacket is incorrect. Rather, as clearly stated on G&H's own website—which DynaEnergetics cites in its Amended Complaint—G&H manufactures and sells the accused perforating guns (the "Accused Product") under the Yellow Jacket Oil Tools brand. Ex. 1 at ¶¶ 14-15; Ex. 3 (Invoice No. 119725, an example G&H invoice for perforating guns), Ex. 4 (www.yjoiltools.com/about). G&H launched the Yellow Jacket Oil Tools brand in 2011, several years ***before*** Yellow Jacket Oil Tools, LLC was formed, and G&H has continued to sell perforating guns under the Yellow Jacket Oil Tools trade name

2

since 2011. Ex. 1 at ¶¶ 14-15; Ex. 4. G&H is headquartered in Houston and its design, development and manufacturing facilities are located in Houston. Ex. 10, (SDTX Decl. of John Kaiser).

Moreover, G&H's website openly states that the trade name "Yellow Jacket Oil Tools" is a "division of G&H Diversified Manufacturing," and the website does not contain any reference to Yellow Jacket Oil Tools, LLC. *See, e.g.*, Dkt. 17 at Ex. B. Similarly, a routine review of the www.yjoiltools.com website shows that it is registered to, maintained by, and administered by G&H. Ex. 5 (ICANN Lookup Page). In fact, this website was registered on March 20, 2013, two years *before* Yellow Jacket was formed. *Id.*; Ex. 2 at 2. Public records even show that the trademark for the Yellow Jacket Oil Tools name and design is registered to G&H Diversified Manufacturing, LP. Ex. 6 (Yellow Jacket Oil Tools Trademark Registration).

More problematic for DynaEnergetics, Yellow Jacket *does not* have a regular and established place of business in the Western District of Texas. Although Plaintiffs attempt to support venue by identifying a property located at 4608 S County Road 1310, Odessa, TX, 79765, *see* Dkt. 17 at ¶ 5, that property has no connection to Yellow Jacket. Instead, G&H began leasing that property on December 1, 2012 and currently rents on a month-to-month basis. Ex. 1 at ¶¶ 16-18; Ex. 7 (Lease Agreement); Ex. 8 (Fifth Amendment to Lease Agreement); Ex. 9 (Rent Check to Johnny Warren). Yellow Jacket does not occupy, own, or hold any lease to the property at 4608 S County Road 1310 or anywhere else in the Western District of Texas. Ex. 1 at ¶ 10. Simply put, Yellow Jacket does not do any of the things alleged in DynaEnergetics Amended Complaint. *Id.*

## ARGUMENT

**1. Venue is Not Proper as to All Parties**

In patent-infringement lawsuits, venue must be proper for each defendant. *Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 563-64 (1942). In its amended complaint, Plaintiffs have

failed to present any facts that indicate that venue is proper as to Yellow Jacket in the WDTX. As presented in its original motion to dismiss, Yellow Jacket has no sales, employees, or business locations in this district. Ex. 1 at ¶¶ 7-13. Yellow Jacket has no business locations anywhere but Houston, TX. Ex. 2. Adding G&H to the Amended Complaint has not changed these facts.

Plaintiffs' Amended Complaint contends that Yellow Jacket's original motion is moot because of Plaintiffs' addition of G&H as a party. The only basis Plaintiffs appear to have for this assertion is the bare allegation that Yellow Jacket is somehow an "alter ego" of G&H. Dkt. 17 at ¶ 23. This bare allegation is insufficient.

Under Texas Law, corporations are presumed to exist as separate entities. *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 82 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Plaintiffs have a "substantial burden" to show that G&H and Yellow Jacket are alter egos. *Interactive ToyBox, LLC v. The Walt Disney Company et al*, 2018 WL 5284625, at *4 (W.D. Tex., 2018). To determine whether the alter ego doctrine applies, courts consider "the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006). Even "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). "There must be a 'plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family.'" *Licea v. Curacao Drydock Co.*, 952 F.3d 207, 213 (5th Cir. 2015) (*quoting PHCMinden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 176 (Tex. 2007)).

Here, Plaintiffs have identified no such "plus factor" and therefore cannot overcome the presumption of corporate separateness. While it is true that G&H is Yellow Jacket's sole member, and that G&H and Yellow Jacket have the same people as officers, this alone is not enough. *Compare,* Ex. 2 with Ex. G to Dkt. 17 (G&H's CEO, President and CFO shared with Yellow Jacket); *Hargrave,* 710 F.2d at 1160.[1] Plaintiffs have alleged no facts to show that Yellow Jacket and G&H are ignoring corporate formalities and G&H branding its products as "Yellow Jacket Oil Tools" is of no consequence. *See, e.g. Interactive ToyBox*, 2018 WL 5284625, at *3 (Public statements made by The Walt Disney Company that it "owned and operated" Disney branded stores owned by a subsidiary, Disney Stores USA, LLC, was not enough to overcome presumption of corporate separateness.). As a result, Plaintiffs have not met their substantial burden to show that G&H and Yellow Jacket should be treated as alter egos.

**2. If Yellow Jacket is Not Dismissed, this Case Must Be Transferred to the SDTX**

Venue is proper in a patent infringement case where the defendant "resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017). In this case, Plaintiffs have made clear that they believe that Yellow Jacket must be included in their patent infringement claims. Rather than dismiss Yellow Jacket in the face of the original motion to dismiss, Plaintiffs kept it as a party. Plaintiffs then added Yellow Jacket as a third-party defendant in the SDTX Action. *See Answer and Counterclaim, G&H Diversified Mfg. v. DynaEnergetics Europe*, No. 3:20-cv-00376 (S.D. Tex. Mar. 8, 2021), ECF No. 28 at 6 (adding Yellow Jacket as a third-party defendant in its patent infringement counterclaim). Having insisted

---

[1] ¶ 22 of the Amended Complaint incorrectly attributes employees of G&H to Yellow Jacket based on the website www.yjoiltools.com, which is owned and operated by G&H.

on pursuing claims against both Yellow Jacket and G&H, the only district in which venue is proper as to both is the SDTX.

Because Yellow Jacket has no business operations, venue is only proper where it resides. Yellow Jacket is incorporated in Texas, and therefore "resides" in Texas. *TC Heartland*, 137 S. Ct. at 1517; Ex. 2. However, a corporation is not a resident of every district of the state in which is it incorporated merely because it is incorporated in that state. *In re BigCommerce, Inc.*, 890 F.3d 978, 982 (Fed. Cir. 2018). Under § 1400(b), a corporation resides "only in the single judicial district within that state where it maintains a principal place of business, or, failing that, the judicial district in which its registered office is located." *Id.* at 986.

Yellow Jacket has a registered agent at 11927 Tanner Road, Houston, Texas, 77041, and maintains its principal place of business, to the extent it has one, at the same address, within the SDTX. Ex. 2. Likewise, G&H is incorporated in Texas and headquartered in Houston. Ex. 10 at ¶ 5. Therefore, venue is appropriate as to both Defendants in the SDTX and this case should be transferred to the SDTX given Plaintiffs' insistence on maintaining an action against Yellow Jacket.

**3. If Yellow Jacket is Dismissed, the Court Should Transfer the Case to the SDTX Under 28 U.S.C. § 1404(a)**

Under 28 U.S.C. § 1404(a), DynaEnergetics' patent infringement suit against G&H should be transferred to the SDTX, where G&H filed a declaratory judgment action for non-infringement prior to being added to this case.[2] Section 1404(a) provides that a change of venue is necessary when appropriate for the convenience of the parties, as evaluated by a number of "convenience factors," which are divided into private interest factors and public interest factors. *See* 28 U.S.C.

---

[2] *G&H Diversified*, No. 3:20-cv-00376 (Dec. 14, 2020), ECF 1. Because Yellow Jacket and G&H are not alter egos, the SDTX case is first filed with respect to G&H.

6

§ 1404(a); *Mission Insurance Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602-03 (5th Cir. 1983); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

These factors clearly demonstrate that transfer to the SDTX is more convenient for the parties than keeping this case in the WDTX.[3] *In re Volkswagen*, 545 F.3d at 315 (Moving party must "clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (*quoting* § 1404(a)).

### A. All Private Interest Factors Favor Transfer to the SDTX

#### i. The Relative Ease of Access to Sources of Proof Weighs in Favor of Transfer

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, 2019 WL 4743678, at *2. Under this factor, the Court considers only documents and physical evidence. *Kuster v. Western Digital Tech., Inc.*, No. 6:20-cv-00563-ADA (W.D. Tex. February 9, 2021). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (*citing In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

As detailed below, this factor weighs in favor of transfer. As to G&H, who is the focus of the inquiry, its documents are in the SDTX. But more importantly, there are several identified third-parties, who are in SDTX or headquartered in the SDTX. Nearly all relevant evidence possessed by Plaintiffs is in either Houston, Texas or outside of the country.

---

[3] If the Court determines that Yellow Jacket is an alter ego of G&H and declines to dismiss Yellow Jacket, then the factors presented herein with respect to G&H also apply to Yellow Jacket.

### a) Evidence from G&H

G&H has extensive ties to the SDTX. G&H's headquarters is in Houston, Texas. Ex. 10 at ¶5. Of G&H's 245 employees, 238 of them work in Houston, Texas. *Id.* at ¶6. All research, design, development, and manufacturing of the Accused Product takes place in Houston, Texas. *Id.* at ¶11. All potentially relevant documents related to the research, design, development, and manufacturing of the Accused Product are in Houston, Texas. *Id.* at ¶16. No relevant documents are in the WDTX. *Id.* at ¶23.

### b) Evidence from Third Parties

As detailed below in Section ii, G&H has identified seven inventors of two prior art references who are based in the SDTX. *See* Ex. 11 (U.S. Pat No. 10,077,641); Ex. 12 (U.S. Pat. Pub. No. 2016/0084048). In addition to the written prior art, Schlumberger systems related to these two patents, Fractal and Safe Jet, are potential invalidating systems under at least 35 U.S.C. § 102(a)(1) and § 103. These inventors, as well as other witnesses at Schlumberger, possess relevant information and documents on patents and systems that invalidate the '697 Patent. Additionally, Schlumberger's headquarters is in Houston, in the SDTX. Ex. 13 at p. 1 (Schlumberger Website). As a result, documents relating to the design and development of the prior art will be found in the SDTX or elsewhere outside of Texas (California, Canada, and India).

Additionally, in its Amended Initial Disclosures in the SDTX case, DynaEnergetics identified seven companies with knowledge of relevant facts. *See* Ex. 14. Of those, six are based in the SDTX and as a result their relevant documents are in the SDTX. Ex. 13.

### c) Evidence from DynaEnergetics

DynaEnergetics' U.S. headquarters is in Houston, Texas. Dkt. 17 at ¶ 2. DynaEnergetics' other offices are outside of the U.S. or are merely manufacturing facilities that are not home to any

relevant documents. *See* Ex. 15 (DynaEnergetics Website); Dkt. 17 at ¶ 2.

DynaEnergetics would be hard pressed to explain how the WDTX provides greater ease of access to the relevant documents in DynaEnergetics' possession when DynaEnergetics' U.S. headquarters is in Houston, Texas—the heart of the SDTX. Dkt. 17 at ¶ 2. Hence, the SDTX has greater access to relevant documents from all parties than the WDTX. *See Apple*, 979 F.3d at 1340-41 (Fed. Cir. 2020) (concluding the NDCA is the more appropriate venue because "Apple stores a significant amount of relevant information in NDCA," and, as the accused infringer, the place where the accused infringer's documents are kept weighs in favor of transfer to that location).

### ii. The Availability of Compulsory Process to Secure Attendance of Witnesses Favors Transfer

Although discovery has yet to start, both parties have identified relevant third-party witnesses, who reside outside of this district and in the SDTX. As a result, this factor weighs heavily in favor of transfer to the SDTX. *See GeoTag, Inc. v. Starbucks Corp.*, 2013 WL 890484, at *3 (E.D. Tex. Jan. 14, 2013) ("Accordingly, transfer is heavily favored when the majority of the non-party witnesses reside in the transferee forum.").

G&H has identified seven third-party prior art inventors with highly relevant knowledge of the prior system art to the '697 Patent who live and work in the Houston area. *See* Ex. 11; Ex. 12; Ex. 16 (Prior Art Inventors' LinkedIn and Google Maps); Ex. A, Decl. of Steven Jugle at ¶ 18 (showing location of witnesses). The two prior art references relate to systems developed by Schlumberger known as Fractal and Safe Jet. *See* Ex. 11; Ex. 12. For both patents, none of the potential witnesses reside in the WDTX, and the majority reside in the SDTX. Ex. A at ¶ 18.

While prior art witnesses normally do not testify in trial, this case presents a situation in which some trial testimony may be likely to establish the functionality and public availability of system prior art. As a result of these witnesses' locations, only the SDTX has compulsory subpoena

power to compel these seven witnesses to testify at trial. None of these inventors are within the subpoena power of the WDTX. Additionally, given the nature of a patent trial, the uncertainty of when witnesses will testify, and the distance from the Houston area to the Waco area, the attendance of the inventors at trial in the WDTX would be significantly cost prohibitive. *See Auto–Dril, Inc. v. National Oilwell Varco, L.P.*, 2016 WL 6909479, at *8 (W.D.Tex., 2016) (holding witnesses would incur a substantial expense if required to travel from Houston, TX to Waco, TX).

In addition to witnesses G&H has identified, DynaEnergetics itself has identified third-party witnesses that may only be within the compulsory subpoena power of SDTX. DynaEnergetics has identified unnamed persons at Apache Corporation, Welltec, Schlumberger, Halliburton, Weatherford, Baker Hughes and Patriot as having knowledge as to willfulness and non-obviousness. Ex. 14. Of those, six have their operations in SDTX and presumptively, if any witnesses are to be called, they will be in the SDTX. Ex. 13.

Additionally, this factor is neutral with respect to the inventors listed on the '697 Patent who are no longer employed by DynaEnergetics, Frank Preiss, Eric Mulhern, and David Parks, because they are located outside of the United States. *Genentech*, 566 F.3d at 1344 (concluding that little weight, if any, should be given to the travel of foreign witnesses since they "will be required to travel a significant distance no matter where they testify."); Ex. 17 (DynaEnergetics Colorado Declaration) at ¶ 15; Ex. 18 ('697 Patent).

### iii. The Cost of Attendance for Willing Witnesses Favors Transfer to the SDTX

The convenience of witnesses is the single most important factor in the transfer analysis. *Genentech*, 566 F.3d at 1342. The court considers all potential material and relevant witnesses. *Solas OLED Ltd. v. Apple Inc.*, 2020 WL 3440956, at *6 (W.D. Tex., 2020). The convenience of party witnesses is given relatively little weight compared to non-party witnesses. *Id*. The

inconvenience of party witnesses may have little weight, but the court will consider party witnesses. *Id*.

G&H's likely witnesses with knowledge relevant to this case, John Kaiser, Ben Knight and Ryan Ward, as well as all of G&H's executives, are in Houston. Ex. 10 at ¶¶ 2, 17-19.

On March 11, 2021 DynaEnergetics served initial disclosures in the SDTX Action, which identified seven DynaEnergetics witnesses, two of whom are purportedly in the WDTX. Ex. 19. DynaEnergetics identified these same two witnesses in a declaration filed in Colorado. Ex. 17 at ¶ 16. However, one of these witnesses, Gernot Burmeister, also works out of the Houston headquarters and therefore is neutral with respect to this factor. *Id*. The other witness, Brian Engelkes, is a "Plant Controller" at DynaEnergetics' Blum, TX manufacturing facility. Defendants find it unlikely that a manufacturing plant manager possesses any information relevant to this case that would not be available at Plaintiffs' headquarters in Houston.

After G&H filed its response to DynaEnergetics motion to dismiss or transfer the SDTX Action,[4] DynaEnergetics served amended initial disclosures identifying three more witnesses in the WDTX, Todd Gooding, David Campbell, and Bob Staats, in an attempt to bolster its venue position. Ex. 14. Each of these witnesses appears to be an employee at DynaEnergetics' Blum manufacturing facility. *Id.* Each appears to have nearly identical knowledge to the others, namely "Manufacture and sales of DynaEnergetics' products practicing the '697 Patent," "Non-obviousness of the '697 Patent, including industry praise and commercial success," and "Damages,

---

[4] G&H's response relied on DynaEnergetics' declaration in the Colorado action (Ex. 17) to demonstrate the lack of witnesses in the WDTX and identified three G&H witnesses in SDTX. *See G&H Diversified*, No. 3:20-cv-00376 (Mar. 5, 2021), ECF No. 27; Ex. 20 (DynaEnergetics' Director of Finance, Vice President of Product Management and Marketing, Vice President of Business Development, VP of North and South America Sales, and accounting staff are all located in Houston).

11

including lost profits," as well as to other more senior employees of DynaEnergetics and none appear to have any knowledge directly related to the invention of the '697 Patent. *Id.* Since it is unlikely that a "regional sales manager," "manufacturing process engineer" or "technical services engineer" will have information relevant to this case beyond that of the inventors or DynaEnergetics' previously identified director of sales (Gernot Burmeister, who is at least partially based out of the SDTX), and these witnesses were not identified in DynaEnergetics' Colorado transfer motion, it appears that these witnesses have been manufactured by DynaEnergetics to inflate its claim of having witnesses in this district. Accordingly, the number of witnesses that Plaintiff claims to have in the WDTX should not weigh in support of this factor.

Perhaps the most important witnesses employed by DynaEnergetics, two of the '697 Patent inventors, Thilo Scharf and Liam McNelis, are located outside of the U.S. *See* Ex. 18; Ex. 17 at ¶ 15. Therefore, the location of these witnesses is completely neutral. *Genentech*, 566 F.3d at 1344.

Given that G&H's witnesses are in the SDTX, the third-party witnesses that G&H is most likely to call at trial—should they be deemed "willing" witnesses—are located in the SDTX, and the witnesses DynaEnergetics' has identified are either foreign witnesses or realistically unlikely witnesses in the WDTX who appear to have little relevant information, the cost of attendance for willing witnesses weighs heavily in favor of transfer to the SDTX.

### iv. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive Weigh in Favor of Transfer

Judicial economy also favors transfer to the SDTX because the SDTX Action is ahead of this case. *See Certified Measurement, LLC v. Centerpoint Energy Houston Elec. LLC*, 2015 WL 1046267, at *4 (E.D. Tex., 2015) (finding that this factor weighed in favor of the venue that had already held a scheduling conference). A scheduling conference in the SDTX Action was held on March 11, 2021 and a Docket Control Order was entered on March 12, 2021. *G&H Diversified*,

3:20-cv-00376 (Mar. 12, 2020), ECF No. 33. The parties in this case have not yet held a Rule 26 conference nor has a scheduling conference been set. Transfer to the SDTX would avoid duplicating work that has already been performed and save time of both this Court and the parties.

Additional considerations related to efficiency are admittedly neutral in this case because there are patent infringement cases related to the '697 Patent all over Texas. Ex. 21 ('697 Patent Case List). However, and importantly, two other cases regarding infringement of the '697 Patent are pending in the SDTX. *Id.* Considering this in combination with the facts detailed *supra*, judicial economy weighs in favor of transfer to the SDTX.

### B. The Public Interest Factors Also Favor Transfer to the SDTX

#### i. Southern District of Texas' Localized Interest Weighs in Favor of Transfer

The localized interest factor pertains to a forum's "connections with the events that gave rise to th[e] suit." *In re Volkswagen*, 545 F.3d at 318. "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighted in that venue's favor." *In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). This suit relates to G&H's alleged infringement of the '697 Patent when it designed, developed, and manufactured its Accused Product.

G&H's design, development, and manufacture of the Accused Product have significant connections to the SDTX. G&H's headquarters and registered address is in Houston, Texas. Ex. 10 at ¶5. All of G&H's research, design, development, and manufacturing of G&H's Accused Product takes place in Houston, Texas. *Id.* at ¶¶ 12-13. All documents related to the research, design, development, and manufacturing of the Accused Product are in Houston, Texas. *Id.* at ¶ 16. All employees involved in the development of the Accused Product and employees that otherwise have relevant knowledge related to the Accused Product are in Houston, Texas. *Id.* at ¶¶

13

2, 15, 17-20. Even G&H's U.S.-based marketing leadership and accounting and financial departments responsible for the Accused Product are in Houston, Texas. *Id.* at ¶ 21.

The overwhelming number of events that gave rise to this suit—G&H's research, design, development, and manufacturing of the Accused Product—occurred in the SDTX. As a result, the SDTX has a stronger local interest than the WDTX. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (holding a venue's "interest in [a] matter is self-evident" when the alleged infringing product was developed and tested in the venue and the venue is where the relevant books and documents are maintained).

### ii. Administrative Difficulties Related to Court Congestion Is Likely Neutral

It is unclear if court congestion weighs for or against transfer in this case. In analyzing court congestion, "courts commonly consider the Federal Judicial caseload statistics." *USPC Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *5 (N.D. Tex. Mar. 25, 2011). Court congestion can be measured by "whether a trial may be speedier in another court because of a less crowded docket." *Genentech*, 566 F.3d at 1347. The main consideration is not the time to trial for all cases, but rather the time to trial for patent cases. *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1003 (E.D. Tex. 2009) (recognizing that this factor must be based on specific time to trial for patent cases and not all civil cases) (citing *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319-20 (Fed. Cir. 2008)).

According to statistics from Lex Machina, patent cases filed in the WDTX over the last two-and-a-half years get to trial in a little less than two years. Ex. 22 at 1. The time to trial for patent cases in the SDTX is a little less than three years. Ex. 23 at 1. While these statistics show that patent cases generally get to trial faster in the WDTX, this is limited by a very small sample size—only three patent trials have occurred in the WDTX and five in the SDTX during this period.

Due to the limited sample size and the impact that COVID-19 will have on time to trial statistics, it is difficult to understand the significance of this factor. In any case, the convenience of the parties discussed *supra* outweigh any potential slight delay in getting this case to trial in the SDTX.

### iii. The Remaining Public Interest Factors are Neutral

The remaining public interest factors—conflicts of law and the courts' familiarity with patent law—are neutral.

### C. Taken Together, the § 1404(a) Convenience Factors Favor Transfer to the SDTX

As shown above, each of the four private interest factors weighs in favor of transferring this case to the SDTX. The public interest factors also weigh in favor of transfer. Three of these factors are neutral: the administrative difficulties flowing from court congestion, the familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws. However, the remaining factor, the local interest in having localized interests decided at home, strongly weighs in favor of transfer as the Accused Products are designed, developed, and manufactured in the SDTX. Accordingly, G&H has demonstrated that a transfer to the SDTX is clearly more convenient for the parties.

### CONCLUSION

Venue is improper with respect to Yellow Jacket and therefore this case must be dismissed or transferred to a Court where venue is proper for Yellow Jacket. Even if Yellow Jacket is dismissed, the case against G&H should be transferred to the Southern District of Texas for the convenience of the parties.

Dated: March 19, 2021                                    Respectfully submitted,

                                                           */s/ Amir H. Alavi*

        Amir Alavi
        State Bar No. 00793239
        Todd Mensing
        State Bar No. 24013156
        **AHMAD, ZAVITSANOS, ANAIPAKOS,**
        **ALAVI & MENSING, P.C.**
        1221 McKinney Street, Suite 2500
        Houston, Texas 77010
        Telephone: (713) 655-1101
        Facsimile: (713) 655-0062
        aalavi@azalaw.com
        tmensing@azalaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2021, a true and correct copy of this document has been filed electronically via the Court's CM/ECF filing system and subsequently all counsel in this matter deemed to accept service electronically will be notified via the Court's CM/ECF filing system.

        */s/ Amir H. Alavi*
        Amir Alavi