**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |
|---|---|
| DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC., <br><br>     Plaintiffs, <br><br>     v. <br><br> YELLOW JACKET OIL TOOLS, LLC and G&H DIVERSIFIED MANUFACTURING, LP <br><br>     Defendants. | Civil Action No: 6:20-cv-01110-ADA |

**PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANTS' RENEWED MOTION**
**TO DISMISS OR ALTERNATIVELY TRANSFER TO THE SOUTHERN DISTRICT**

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 4

     A.    Venue is Proper for All Parties in the Western District of Texas. .......................... 4

          1.    Yellow Jacket Has an Established Place of Business in the WDTX. ......... 4

          2.    In the Alternative, Yellow Jacket is G&H's Alter Ego. ............................ 6

     B.    There Is No Good Cause to Transfer to SDTX and the Convenience Factors Favor WDTX. .................................................................................. 10

          1.    The Private Interest Factors Are Neutral or Favor WDTX...................... 11

               a.    The Sources of Proof Are Equally Available in WDTX. ............. 11

               b.    The Availability of Compulsory Process Favors WDTX. ............ 12

               c.    The Cost and Convenience of Attendance for Willing Witnesses Are the Same.............................................................. 14

               d.    Judicial Economy Heavily Favors the WDTX Action. ................ 15

          2.    The Public Interest Factors Dictate That This Case Must Remain in WDTX................................................................................................ 16

               a.    The WDTX has a Significant Localized Interest in the Outcome of this Action.................................................................. 16

               b.    Keeping this Action in WDTX Minimizes Administrative Difficulties Related to Court Congestion....................................... 17

               c.    Remaining Neutral Public Interest Factors Do Not Support Any Compelling Circumstance to Transfer. ................................ 17

III.    CONCLUSION................................................................................................. 18

## <u>TABLE OF AUTHORITY</u>

**Cases**

*B.E. Tech., LLC v. Amazon Dig. Servs., Inc.*,
No. 2:12-cv-02767-JPM-cgc, 2013 WL 3807820 (W.D. Tenn. July 19, 2013) ............... 15

*Canyon Furniture Co. v. Rueda Sanchez*,
No. SA-18-CV-00753-OLG, 2018 WL 6265041 (W.D. Tex. Nov. 8, 2018) .................... 6

*East Tex. Boot Co., LLC v. Nike, Inc*.,
Nos. 2:16-CV-0290-JRG-RSP, 2:16-CV-0475-JRG-RSP, 2017 WL 2859065
(E.D. Tex. Feb. 15, 2017) ................................................................................. 12

*Elecs. for Imaging, Inc. v. Coyle*,
394 F.3d 1341 (Fed. Cir. 2005) .......................................................................... 10

*Freudensprung v. Offshore Tech. Servs., Inc.*,
379 F.3d 327 (5th Cir. 2004) .............................................................................. 8

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*,
867 F. Supp. 2d 859 (E.D. Tex. 2012) ........................................................... 12, 16

*Hammond Dev. Int'l, Inc. v. Google LLC.*,
No. 1:20-cv-00342-ADA, 2020 WL 3452987 (W.D. Tex. June 24, 2020) ..................... 12

*Hargrave v. Fibreboard Corp.*,
710 F.2d 1154 (5th Cir. 1983) ............................................................................ 8

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008) .......................................................................... 16

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .................................................................. 11, 17, 18

*Konami Dig. Entm't Co. v. Harmonix Music Sys., Inc.*,
No. 6:08cv286, 2009 WL 781134 (E.D. Tex. Mar. 23, 2009) ................................... 11

*Lincoln Imports, Ltd., Inc. v. Santa's Best Craft, Ltd.*,
No. H-07-2803, 2008 WL 1781020 (S.D. Tex. Apr. 16, 2008) ................................. 12

*Patin v. Thoroughbred Power Boats Inc.*,
294 F.3d 640 (5th Cir. 2002) ............................................................................. 4

*Precis Grp., LLC v. TracFone Wireless, Inc.*,
No. 6-20-CV-00303-ADA, 2021 WL 932046 (W.D. Tex. Mar. 11, 2021)2, 4, 5, 6, 10, 16, 17

*Reul v. Sahara Hotel*,
    372 F. Supp. 995 (S.D. Tex. 1974) .................................................................. 10

*Rmail Ltd. v. Amazon.com, Inc.*,
    No. 2:10-cv-258-TJW, 2011 WL 4591920 (E.D. Tex. Sept. 20, 2011) .......................... 17

*Safeco Ins. Co. of Indiana v. Nidec Motor Corp.*,
    No. 4:20-CV-00183-ALM, 2021 WL 134099 (E.D. Tex. Jan. 14, 2021) ......................... 6

*Standard Oil Co. v. Am. Cyanamid Co.*,
    774 F.2d 448 (Fed. Cir. 1985)........................................................................ 13

*Summit 6 LLC v. HTC Corp.*,
    No. 7:14-cv-0014-O, 2014 WL 4449821 (N.D. Tex. Sept. 10, 2014).............................. 12

*Tinnus Enters., LLC v. Telebrands Corp.*
    No. 6:16-CV-00033-RWS, 2017 WL 3671375 (E.D. Tex. Aug. 1, 2017), report
    and recommendation adopted, No. 6:16-CV-00033, 2017 WL 4639861 (E.D. Tex.
    Oct. 17, 2017) .............................................................................................. 8, 10

*VirtualAgility, Inc. v. Salesforce.com, Inc.*,
    No. 2:13-cv-00011-JRG, 2014 WL 459719 (E.D. Tex. Jan. 31, 2014)........................... 13

**Statutes**

28 U.S.C. § 1400.................................................................................................. 3, 10

28 U.S.C. § 1404.................................................................................................. 3, 15

Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc. (collectively, "DynaEnergetics") submit this response in opposition to Defendants G&H Diversified Manufacturing LP ("G&H") and Yellow Jacket Oil Tools, LLC's ("Yellow Jacket") (collectively, "Defendants") motion to dismiss or alternatively transfer to the Southern District of Texas (Dkt. 24, "Motion to Dismiss").

## I.  INTRODUCTION

Defendants' Motion to Dismiss is nothing more than an attempt to use their murky corporate structure to their benefit and twist the Federal Rules of Civil Procedure beyond recognition to avoid adjudication of this patent infringement dispute before this Court.  Yellow Jacket claims it "has no business operations" at all (Dkt. 24 at 6), but declines to seek an outright dismissal for failure to state a claim and instead seeks a Rule 12(b)(3) dismissal for improper venue on behalf of both itself and G&H, seeking to have this dispute heard instead in the Southern District of Texas ("SDTX").  However, this is the first-filed action and venue is proper in this district.

DynaEnergetics brought this suit against Yellow Jacket in this Court because the Yellow Jacket Pre-Wired Perforating Guns—sold and used in the Permian Basin located primarily in the Western District of Texas ("WDTX")—infringe DynaEnergetics' '697 Patent.  Venue is proper because Yellow Jacket has an established place of business in Odessa Texas (Ex. A,[1] left), and the website listed on Yellow Jacket sign, www.yjoiltools.com, advertises this location (Ex. B, right).

---

[1] Documents referenced as Exhibits herein are Exhibits to the Declaration of Stephanie Nguyen in Support of DynaEnergetics' Opposition to Defendants' Motion to Dismiss or, Alternatively, to Transfer to SDTX, filed contemporaneously herewith.





Located in major U.S. Oil & Gas Plays

We distribute oil tools from strategically located warehouses in major U.S. oil & gas producing regions. Chances are we're close to your operation.



Defendants nevertheless attempt to convince this Court that the WDTX is not a proper venue because G&H rather than Yellow Jacket leases the building and owns the website. Indeed, Defendants claim that Yellow Jacket is merely a "holding company that does not conduct any business *at all*," is "wholly owned by G&H," does not keep separate records, and has common key employees. Dkt. 24 at 2. This is the epitome of the type of holding out of one company as another, which this Court has considered and rejected as a basis for challenging venue. *Precis Grp., LLC v. TracFone Wireless, Inc.*, No. 6-20-CV-00303-ADA, 2021 WL 932046, at *4 (W.D. Tex. Mar. 11, 2021) (holding that plaintiff's allegations that defendant owned and operates a store in San Antonio, Texas were sufficient to establish that defendant has a regular and established place of business in WDTX); *see* Section II.A.2, *infra*.

The remainder of Defendants' assertions in their attempt to avoid WDTX adjudication are nothing more than unsupported, self-serving suppositions. For example, in its SDTX response to DynaEnergetics' motion to dismiss, Defendants suppose that DynaEnergetics intentionally omitted G&H from its original complaint so that "it could better maintain venue in WDTX without G&H as a party" (Ex. C, G&H Opposition SDTX Dkt. 27 at 9) while

2

simultaneously supposing in this Motion that DynaEnergetics only amended its complaint to <u>add</u> G&H "to preserve venue" in the WDTX (Dkt. 24 at 1).[2]  These are mutually exclusive ponderings and neither make any sense. DynaEnergetics sued Yellow Jacket in WDTX because the <u>www.yjoiltools.com</u> website advertises a Pre-Wired Perforating Gun that Yellow Jacket manufactures and that infringes the '697 Patent.

Yellow Jacket Oil Tools is a full-service manufacturer and distributor of completion tools and oilfield perforating systems designed to improve performance, enhance safety, and stretch our clients' dollar as far as it can go. Since the introduction of our popular rust-free perforating gun in 2011, we have designed and engineered additional products to support every tool on the wireline string. With over a dozen awarded US Patents, we continue to revolutionize the industry by bringing an innovative approach to working smarter and safer.

The quick growth of Yellow Jacket Oil Tools is proof of our commitment to execute with excellence. With over 3,000,000 Yellow Jacket guns sold and the consistent launch of new products, customers count on Yellow Jacket for top-performing, quality tools.

Dkt. 24-5 (annotated).  DynaEnergetics amended its complaint, as is its right, to include claims against G&H because G&H affirmatively represented that it participated in the manufacture and sales of the infringing Yellow Jacket Pre-Wired Perforating Gun.  Dkt. 16 at 2-3. These facts are straightforward and dispositive as to Defendants' Motion to Dismiss.

All that remains once the venue issues are dispensed of is the question of convenience. Defendants have not identified any compelling circumstances that justify or require the adjudication of this case in SDTX over the first-filed forum in WDTX. In fact, the § 1404 convenience factors weigh in favor of the WDTX venue. *See* Section II.B, *infra*. Under these facts, the Court should reject Defendants' motion to dismiss or transfer this case.

---

[2] If Defendants' assumptions about strategy were true, DynaEnergetics would have been better off <u>not</u> including Yellow Jacket in this action to maintain venue in the WDTX as its entire § 1400 argument is premised upon the inclusion of Yellow Jacket.  But doing so would mean simply accepting the word of the alleged infringer—despite all indicia to the contrary—that Yellow Jacket plays no part in the manufacture or sale of Yellow Jacket products.

## II.     ARGUMENT

### A.     Venue is Proper for All Parties in the Western District of Texas.

Defendants' motion to dismiss or transfer is premised entirely on the assertion that Yellow Jacket is not subject to venue in this Court because it is apparently a holding company wholly-owned and controlled by G&H that does not conduct business in WDTX. However, Defendants simultaneously assert that Yellow Jacket does not conduct any business or have any connection with the infringing Yellow Jacket Pre-Wired Perforating Gun *and* that venue must be transferred to accommodate the Yellow Jacket non-entity.  Defendants are clearly trying to play a jurisdictional game by leveraging the unclear relationship between the two companies and how they relate to the patent infringement assertions against both.

Even if Defendants' claims are taken as true, Defendants' own admitted facts are enough to establish that G&H exercises complete control over Yellow Jacket so as to establish an alter ego relationship between two corporations, and therefore, venue is proper as to both parties. *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)(explaining that adjudication in a particular district is proper where an entity is an alter ego or successor of a corporation that would be subject to jurisdiction in that court). The available facts—in addition to the way that Defendants hold themselves out to the public—are enough to show that Yellow Jacket indeed has an established place of business in WDTX and therefore venue is proper. *See Precis Grp.*, 2021 WL 932046, at *2 ("On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff.") (citation, quotation marks omitted).

### 1.     Yellow Jacket Has an Established Place of Business in the WDTX.

Defendants claim that "Plaintiffs have failed to present any facts that indicate that venue is proper as to Yellow Jacket in the WDTX." Dkt. 24 at 3-4.  This is untrue (*see* Dkt. 17, ¶¶ 8-

15) and every single statement made by Defendants in a futile attempt to support this claim reflects their attempts to game the system and use a murky corporate structure to their advantage.

First, Defendants assert that "Yellow Jacket does not have a regular and established place of business in the Western District of Texas." Dkt. 24 at 3 (emphasis omitted). Untrue. As pled in the First Amended Complaint (Dkt. 17 ¶ 5), below is a photograph of the building located at 4608 S. County Road 1310, Odessa, Texas (Ex. A, left) as well as an image taken from the home page of www.yjoiltools.com advertising Yellow Jacket's physical locations including in Odessa, Texas (Ex. B, right).



Second, Defendants assert that Yellow Jacket "does not manufacture or sell any products." Dkt. 24 at 2. Again its public representations contradict this claim. As plead in the First Amended Complaint (Dkt. 18 ¶ 23), the accused product is featured prominently on the products page at www.yjoiltools.com as the Yellow Jacket "Pre-Wired Perforating Gun." *See* Dkt. 17-2; Dkt. 17-8; Dkt. 17-9. These allegations, taken as true, are more than sufficient to establish that Yellow Jacket has a regular and established place of business in the Western District. *Precis Grp., LLC*, 2021 WL 932046, at *4 (holding that plaintiff's allegations that

defendant owned and operates a store in San Antonio, Texas were sufficient to establish that defendant has a regular and established place of business in WDTX).

> ### 2.    In the Alternative, Yellow Jacket is G&H's Alter Ego.

Defendants do not dispute these connections between the infringement and the WDTX, but instead claim G&H—rather than Yellow Jacket— leases the building and owns the website pictured above and manufactures the accused products. Dkt. 24 at 2. However, G&H holding itself out as Yellow Jacket will not defeat venue when the alter ego has the identified connections. *See Precis Grp., LLC*, 2021 WL 932046, at *4-5; *Safeco Ins. Co. of Indiana v. Nidec Motor Corp.*, No. 4:20-CV-00183-ALM, 2021 WL 134099, at *4 (E.D. Tex. Jan. 14, 2021); *Canyon Furniture Co. v. Rueda Sanchez*, No. SA-18-CV-00753-OLG, 2018 WL 6265041, at *8 (W.D. Tex. Nov. 8, 2018) ("Plaintiff's burden of demonstrating that two entities are 'alter egos' is 'less stringent' [to establish jurisdiction] . . . and at the motion to dismiss stage, a plaintiff must make only a prima facie case for piercing the corporate veil.") (citation omitted).

As pled in the First Amended Complaint, Yellow Jacket is an alter ego of G&H.  *See* Dkt. 17, ¶¶ 8-15, 21-24.  For example, G&H claims to own the website, www.yjoiltools.com, but as shown below, that website brands itself as Yellow Jacket.



Ex. B, http://www.yjoiltools.com/ (annotated). The only clue Defendants point to of G&H's involvement is the small footer at the bottom of the page identifying Yellow Jacket as a division of G&H. However, that same footer designates all copyrights on that website as owned by "Yellow Jacket Oil Tools," again suggesting that it, rather than G&H, is carrying out the infringing conduct.

Defendants also attempt to make much of the fact that "G&H launched the Yellow Jacket Oil Tools brand in 2011, several years before Yellow Jacket Oil Tools, LLC was formed." Dkt. 24 at 2-3 (emphasis omitted). However, each action taken in regards to the Yellow Jacket brand is stated on the www.yjoiltools.com website to have been taken by Yellow Jacket. Dkt. 24-5. It even goes so far as to state that "Yellow Jacket Oil Tools becomes the largest manufacturer of perforating guns in the U.S." in 2014. *Id.* (emphasis added).



*Id.* (annotated). These are not mere statements describing the Yellow Jacket brand, these are

statements that Yellow Jacket took action to launch new products and expand its business.  If anything, this illustrates the degree to which G&H has held itself out as Yellow Jacket: G&H established a brand that became so wrapped up in its identity that it formed the Yellow Jacket entity to codify that reality.

To the extent a traditional alter ego analysis is even needed in the venue context, that test is more than satisfied on the current facts.  When considering whether an alter ego exists, "this Court considers the following nonexhaustive factors: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)).  In addition to the holding out described above, Defendants make admissions with regard to every single one of these so-called "plus factors" (Dkt. 24 at 4):

1.  Defendants admit that Yellow Jacket is wholly-owned by G&H, where "G&H Diversified Manufacturing, LP is the sole member of Yellow Jacket Oil Tools, LLC,"[3] and that G&H is the owner of the Yellow Jacket trademark. Dkt. 24-2, ¶ 4; Dkt. 24 at 3.

2.  Defendants admit that "G&H and Yellow Jacket have the same people as officers," as well as the same headquarters.  Dkt. 24 at 5 (citing Dkt. 24-2 and

---

[3] Because Yellow Jacket does not have stock, G&H's ownership of Yellow Jacket as the sole member is a substitute for factor #1 that shows an alter-ego relationship. *Tinnus Enters., LLC v. Telebrands Corp.* No. 6:16-CV-00033-RWS, 2017 WL 3671375, at *4-5 (E.D. Tex. Aug. 1, 2017), report and recommendation adopted, No. 6:16-CV-00033, 2017 WL 4639861 (E.D. Tex. Oct. 17, 2017) (finding defendants were alter egos where one defendant was the sole member of the other, where defendants maintained the same address, and where one defendant claimed it used the other defendant's name as its marketing brand name)

Dkt. 17-17 as showing that G&H's CEO, President and CFO are shared with Yellow Jacket); Ex. D, Yellow Jacket Answer to Counterclaims in SDTX Action ¶¶ 3-4 (admitting that G&H and Yellow Jacket shared the same headquarters address)); *compare* Dkt. 17-6 *with* Dkt. 17-7 (showing G&H and Yellow Jacket list the same leadership team on their websites).

3.  Defendants admit that Yellow Jacket does not observe any corporate formalities, like maintaining financial records, because Yellow Jacket "does not conduct any business *at all*," "does not lease any property in this district or elsewhere," "does not produce any revenue," and "does not have any employees."  Dkt. 24 at 2; Dkt. 24-2 ¶¶ 7-11.

4.  Defendants admit that separate accounting systems do not exist because "G&H Diversified Manufacturing, PL *[sic]* does not maintain any financial records for Yellow Jacket Oil Tools, LLC." Dkt. 24-2 ¶ 8.

5.  Defendants admit that G&H exercises complete control over Yellow Jacket's daily activities (like the receipt of mail) as evidenced by the fact that a letter from DynaEnergetics and addressed to Yellow Jacket was received by G&H, which later used that letter to establish subject matter jurisdiction over its later-filed declaratory judgment action in the SDTX by quoting the letter but inserting G&H as the party to whom the letter was directed.  *Compare* Ex. E, G&H Complaint SDTX Dkt. 1, ¶ 10 *with* Dkt. 1-4. G&H's control over Yellow Jacket is also evidenced by the fact that Jimmy Kash, the president of G&H, accepted the summons on behalf of Yellow Jacket. Dkt. 7 at 2.

Based on the above factors, it could not possibly be more clear that G&H holds itself out

as Yellow Jacket for nearly all customer facing purposes and simultaneously controls the operations and corporate functioning for Yellow Jacket more than would be normally associated with common ownership. *Reul v. Sahara Hotel*, 372 F. Supp. 995, 998 (S.D. Tex. 1974) (holding that the degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship); *see also Tinnus Enters., LLC*, 2017 WL 3671375, at *4-5 (finding proper venue because defendants were alter-egos, where one defendant was the sole member of the other, where defendants maintained the same address, and where one defendant claimed it used the other defendant's name as its marketing brand name). Thus, by Defendants own admission, G&H and Yellow Jacket have an alter ego relationship.

Despite these admissions—and for the sole purpose of avoiding venue before this Court on behalf of <u>both parties</u>—Defendants' Motion to Dismiss attempts to clearly delineate between G&H and Yellow Jacket.  This Court has rejected similar efforts, finding that where a company is doing business in this district in the name of another, such delineations will not defeat venue. *See Precis Grp., LLC*, 2021 WL 932046, at *4.  Here, as in *Precis* and *Tinnus*, the connections between the entities and this District are more than sufficient to support venue under 28 U.S.C. § 1400(b).

**B.   There Is No Good Cause to Transfer to SDTX and the Convenience Factors Favor WDTX.**

Defendants' request for a convenience transfer is yet another tactic in its quest to avoid adjudication of this dispute in this district—having previously filed a declaratory judgment action in the SDTX after the filing of this action regarding identical subject matter—despite the general rule favoring the forum of the first-filed case.  *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) ("We apply the general rule favoring the forum of the first-filed case") (citations omitted).  This tactic also fails as Defendants cannot demonstrate "good cause"

for the requested transfer by demonstrating "that the transferee venue is clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). In fact, the convenience factors favor adjudication of this dispute in the WDTX.

### 1.      The Private Interest Factors Are Neutral or Favor WDTX.

Defendants improperly focus on the location of its own documents and witnesses in SDTX and ignore the sources of proof that also originate in other locations (including WDTX) which must be considered in the balance of transfer analysis. *See Konami Dig. Entm't Co. v. Harmonix Music Sys., Inc.*, No. 6:08cv286, 2009 WL 781134, at *3-4 (E.D. Tex. Mar. 23, 2009). When all appropriate factors are considered, the private interest factors weigh in favor of adjudication of this action in WDTX.

### a.      The Sources of Proof Are Equally Available in WDTX.

DynaEnergetics owns and operates a 74,000 square foot facility in Blum, Texas, which is located in WDTX and is home to all DynaEnergetics' manufacture and assembly of its DynaStage products which practice the '697 Patent. Ex. F, Declaration of Ian Grieves ("Grieves Decl."), ¶¶ 8-13. Many relevant documents exist at this location. *Id.* ¶ 17. DynaEnergetics also has a second facility in Whitney, Texas, which manufactures some of the DynaStage hardware components. *Id.* ¶ 14.  Defendants also have sources of proof located in the WDTX. Defendants admit they operate the Yellow Jacket building located in Odessa, Texas. Dkt. 24 at 3. This location is used to facilitate sales and operation of the accused product in the Permian Basin region in WDTX. Ex. B, Yellow Jacket Website at 2 (showing the Odessa, TX location as a "strategically located warehouse[] in major U.S. oil & gas producing regions."). In fact, Defendants' only "Warehouse Manager" is based in Odessa, TX.  Dkt. 17-6 at 7 (showing the Yellow Jacket leadership team).

Regardless, Defendants ignore that, as with nearly all modern litigation, the majority of

evidence in this case will be produced electronically and thus its location should be accorded little weight in the convenience analysis. *See Lincoln Imports, Ltd., Inc. v. Santa's Best Craft, Ltd.*, No. H-07-2803, 2008 WL 1781020, at *2 (S.D. Tex. Apr. 16, 2008); *East Tex. Boot Co., LLC v. Nike, Inc*., Nos. 2:16-CV-0290-JRG-RSP, 2:16-CV-0475-JRG-RSP, 2017 WL 2859065, at *2 (E.D. Tex. Feb. 15, 2017). Therefore, Defendants' conclusory and speculative claims regarding the location of sources of proof (Dkt. 24 at 7-9), should be disregarded.  *See Summit 6 LLC v. HTC Corp.*, No. 7:14-cv-0014-O, 2014 WL 4449821, at *7 (N.D. Tex. Sept. 10, 2014). Here, the sources of proof originate from multiple jurisdictions and may be accessed equally from both the SDTX and WDTX. This factor is, therefore, neutral. *See Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 869-70 (E.D. Tex. 2012).

### b. The Availability of Compulsory Process Favors WDTX.

Defendants admit that "prior art witnesses normally do not testify in trial," and yet identify a plethora of prior art inventors who just happen to "live and work in the Houston area" in a self-serving and, frankly, ridiculous attempt to bolster its position on the convenience factors regarding non-party witnesses. *See* Dkt. 24 at 9. As this Court has previously explained, the identification of these cherry-picked prior art inventors should be afforded minimal, if any, weight in the balance of factors analysis. *See Hammond Dev. Int'l, Inc. v. Google LLC.*, No. 1:20-cv-00342-ADA, 2020 WL 3452987, at *4 (W.D. Tex. June 24, 2020) ("Because prior art witnesses are very unlikely to testify (and that Google may have cherry-picked them to begin with) the Court gives their location 'minimal' weight.") (citing *East Tex. Boot Co., LLC*, 2017 WL 2859065, at *4 ("It is highly unlikely that prior art inventors will testify at trial, therefore, the weight afforded their presence in the transfer analysis will be minimal.")). This is because prior art references are understood and interpreted from the perspective of a person having ordinary skill in the art—not from the perspective of the inventor—and therefore any testimony

from prior art inventors is irrelevant in a patent infringement case.  *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985).[4]

In contrast to Defendants' irrelevant non-party witnesses, DynaEnergetics will likely seek testimony from third-party witnesses regarding relevant topics such as (1) the operation and features of the Yellow Jacket Pre-Wired Perforating Guns, (2) competition between DynaStage and these guns, (3) the harm to DynaEnergetics caused by lost sales due to this competition, and (4) the non-obviousness of the '697 Patent including industry praise and commercial success. Dkt. 24-15 at 3-7, DynaEnergetics' Amended Initial Disclosures for SDTX. These third-party witnesses will likely be DynaEnergetics' customers, both direct (service companies) and indirect (exploration and production companies), which are based in the Western District or operate in the Western District.  *Id.*; *see also* Ex. F, Grieves Decl. ¶ 18. These customers actually use DynaEnergetics' products and the infringing products in the Permian Basin, the most active gas shale in the U.S. Ex. G, Permian Basin Article. In fact, in FY2020, out of approximately DynaEnergetics' $146 million in total revenue, over $100 million was directly tied to products made in the Western District, and sold to the Western District or deployed to drilling sites in the Western District.  Ex. F, Grieves Decl. ¶ 18.  Because these witnesses are likely based near the Permian Basin in WDTX, they are outside of the subpoena power of the SDTX to testify at trial.[5] Ex. H, Permian to Galveston Distance. Accordingly, the availability of compulsory process weighs against transfer and in favor of adjudication in the WDTX.

---

[4] To the extent testimony is needed from these prior art inventors, the correct inquiry is whether G&H "might be inconvenienced by having to rely on depositions as opposed to live attendance at trial." *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 WL 459719, at *5 (E.D. Tex. Jan. 31, 2014). It would not.

[5] Defendants guess that because the companies who employ these witnesses have locations in Houston, that the individuals with requisite knowledge are also based there.  Not true.  As made clear in DynaEnergetics' Amended Initial Disclosures, the employees of interest are ones who "are located or work in the Permian Bain in the Western District of Texas." Dkt. 24-15 at 7.

**c.      The Cost and Convenience of Attendance for Willing Witnesses Are the Same.**

DynaEnergetics has identified at least five employees that are based in WDTX who have relevant knowledge of the manufacture, marketing, and sales of DynaEnergetics' products that practice the asserted patent-at-issue. Dkt. 24-15, DynaEnergetics' Amended Initial Disclosures for SDTX, at 4-5. This includes Gernot Burmeister, the VP of North & South American Sales at DynaEnergetics, who works and lives in Austin, Texas.[6]  *Id.* at 4; Ex. F, Grieves Decl. ¶ 16. This also includes Todd Gooding, DynaEnergetics' US Regional Sales Manager (Andrews, Texas), David Campbell, DynaEnergetics' US Manufacturing Process Engineer (Blum, Texas), and Bob Staats, DynaEnergetics' Technical Services Engineer (Blum, Texas).[7]  Dkt. 24-15, DynaEnergetics' Amended Initial Disclosures for SDTX, at 4-5; Ex. F, Grieves Decl. ¶ 16. Additionally, Ian Grieves (president of DynaEnergetics US, Inc. who is based in Germany) as well as several of the non-U.S.-based inventors of the '697 Patent regularly travel to the Blum, Texas facility outside of current COVID-related travel restrictions.  Ex. F, Grieves Decl. ¶ 15. Thus, the cost and convenience of attendance for these DynaEnergetics' witnesses favor the WDTX.

Regardless, the SDTX and WDTX are neighboring jurisdictions, where Houston, TX and Waco, TX are separated by less than 200 miles, and therefore the difference of convenience and cost for Defendants' employees to travel between Galveston and Waco is negligible, particularly

---

[6] Defendants claim that Mr. Burmeister "also works out of the Houston headquarters."  Dkt. 24 at 11.  That is not accurate.  As clearly stated in the declaration cited by Defendants, Mr. Burmeister "lives and is based in Austin, Texas" and merely lists his official work address as DynaEnergetics' Houston headquarters as there is no official DynaEnergetics location in Austin.  Dkt. 24-18 ¶ 16.

[7] Defendants ask the Court to ignore these WDTX witnesses, supposing that they are "unlikely . . . [to] have information relevant to this case beyond that of [DynaEnergetics employees located outside of the WDTX]."  Dkt. 24 at 12.  Defendants' assumptions about the lack of knowledge of these employees—who deal directly with the products that practice the '697 Patent and the market for those products on a daily basis—are nothing more than baseless suppositions and self-serving attorney argument. *See* Dkt. 24 at 11-12.

when considering Defendants' employees must travel nearly three times the distance to get to Defendants' Texas corporate location in Odessa, TX. Ex. I, Houston to Waco Distance; Ex. J, Houston to Odessa Distance. The mere fact that Defendants have identified employee witnesses in SDTX does not make it more convenient, because DynaEnergetics has also identified multiple employee witnesses in WDTX. *See* Dkt. 24-20 at 4-5, 7; Ex. F, Grieves Decl. at ¶ 16; *see also B.E. Tech., LLC v. Amazon Dig. Servs., Inc*., No. 2:12-cv-02767-JPM-cgc, 2013 WL 3807820, at *6 (W.D. Tenn. July 19, 2013) (finding that numerical advantages would not be considered and a single witness in the plaintiff's chosen forum was sufficient to render the factor neutral). Because 28 U.S.C. § 1404(a) provides for transfer "to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient, distance of travel for employee witnesses does not weigh in favor" of either SDTX or WDTX. *Id.* (citation omitted).

### d.     Judicial Economy Heavily Favors the WDTX Action.

Judicial efficiency weighs heavily against transfer. At present, there are three other actions asserting the '697 Patent currently pending before this Court. In addition to the efficiency of having all of the patent infringement cases overseen by the same judge and having a consistent ruling on common issues like claim construction, infringement, validity, and damages, Defendants will also benefit from this Court's Order Governing Proceedings for Patent Cases requiring that most discovery is stayed until the Markman hearing—which is consistent with the same discovery plan schedule that G&H requested in the Case Management Plan in the SDTX action. Ex. K, SDTX Case Management Plan at 6 (stating G&H "requests a temporary stay of all discovery unrelated to claim construction and prior art until after the Court's Markman hearing."). Defendants even admit that "patent cases generally get to trial faster in the WDTX," which serves the interest of both parties to get the quickest resolution of the issues. Dkt. 24 at 14.

In addition, while there are two other patent cases pending in SDTX, the other two are in

Houston, not Galveston, and are each assigned to a different judge.  Also, Defendants did not suggest that this action could be consolidated (or whether Defendants would even support such a consolidation) with the other pending SDTX cases to actually support judicial efficiency.

Accordingly, the efficiencies served to the judicial economy weigh heavily in favor of this case remaining in the WDTX.

2.     **The Public Interest Factors Dictate That This Case Must Remain in WDTX.**

a.     **The WDTX has a Significant Localized Interest in the Outcome of this Action.**

The location of the alleged injury is an important consideration in determining how to weigh the localized interest of the current district in the outcome of the action. *Frito-Lay N. Am., Inc.*, 867 F. Supp. 2d at 872 (citing *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008)). The WDTX has an interest in resolving this patent dispute (1) involving the Yellow Jacket Pre-Wired Perforating Gun manufactured, distributed, sold, and/or offered for sale to customers for use throughout the Permian Basin by Yellow Jacket or G&H as its alter ego, which is primarily located within the WDTX; and (2) adjudicating this case on behalf of DynaEnergetics, who manufactures and assembles all of its competing DynaStage products in the WDTX. Ex. F, Grieves Decl. ¶¶ 8-14.

Because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation," the fact that the WDTX is home to the Permian Basin where the infringing product is used and where the DynaStage products are manufactured, the WDTX has a heavy interest in this litigation. *Precis Grp., LLC*, 2021 WL 932046, at *8 (citation omitted). Therefore, this factor weighs heavily against transfer.

      **b.**      **Keeping this Action in WDTX Minimizes Administrative Difficulties Related to Court Congestion.**

First, this Court has substantial expertise and special standing orders and scheduling guidelines for patent litigation which speed such cases to trial. Defendants in particular should recognize the benefits of having the particular expertise of Judge Albright govern this patent infringement action because Defendants requested in the SDTX Action that most discovery be stayed until the Markman hearing in the Case Management Plan, which is consistent with procedures outlined in Judge Albright's Order Governing Proceedings for Patent Cases. *See* Ex. K, SDTX Case Management Plan at 6.

Second, as noted above Defendants even admit that "patent cases generally get to trial faster in the WDTX," which serves the interest of both parties to get the quickest resolution of the issues. Dkt. 24 at 14. According to the statistics submitted with Defendants' own motion to dismiss, patent cases in WDTX generally get to trial about a full year faster than SDTX. *Id.* This Court has held that "a time period as short as three-months can have an effect on the disposition of this factor." *Precis Grp., LLC*, 2021 WL 932046, at *8 (citation omitted). Therefore, this factor weighs heavily against transfer.

      **c.**      **Remaining Neutral Public Interest Factors Do Not Support Any Compelling Circumstance to Transfer.**

The remaining public interest factor—conflicts of law and the courts' familiarity with patent law—are neutral. However, these factors are not irrelevant to the Court's analysis, because Defendants have the burden of demonstrating that compelling circumstances exist that make the SDTX *clearly* more convenient. For instance, if the Court determines that all of the factors are neutral, then dismissal or transfer is inappropriate. *Rmail Ltd. v. Amazon.com, Inc.*, No. 2:10-cv-258-TJW, 2011 WL 4591920, at *3 (E.D. Tex. Sept. 20, 2011) (denying motion to transfer where all factors were neutral); *see In re Volkswagen of Am., Inc.*, 545 F.3d at 315 n.10

("Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer."). Therefore, factors that are neutral do not aid Defendants in overcoming their significant burden to show a transfer is proper for purposes of convenience.

* * * * *

Defendants have not carried their significant burden to show "good cause" for the requested transfer by demonstrating that adjudicating this dispute in the SDTX would be "clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315.

## III.    CONCLUSION

For the reasons set forth herein, DynaEnergetics respectfully requests this Court deny Defendants' Motion to Dismiss, or Alternatively, to Transfer to the Southern District of Texas in its entirety.

Dated: April 2, 2021                                    Respectfully submitted,

By:    */s/Eric H. Findlay*
Eric H. Findlay
Texas Bar No. 00789886
Roger Brian Craft
Texas Bar No. 04972020
FINDLAY CRAFT P.C.
102 N. College Avenue, Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

18

Barry J. Herman (*pro hac vice*)
Maryland Federal Bar No. 26061
Stephanie M. Nguyen (*pro hac vice*)
DC Bar No. 1046300
Julie C. Giardina (*pro hac vice*)
Maryland Federal Bar No. 21085
WOMBLE BOND DICKINSON (US) LLP
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com
Telephone: (410) 545-5873
Email: Stephanie.Nguyen@wbd-us.com
Telephone: (410) 545-5802
Email: Julie.Giardina@wbd-us.com

Preston H. Heard (*pro hac vice*)
Georgia Bar No. 476319
WOMBLE BOND DICKINSON (US) LLP
271 17th Street, NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 888-7366
Email: Preston.Heard@wbd-us.com

Lisa J. Moyles (*pro hac vice*)
Connecticut State Bar No. 425652
Jason M. Rockman (*pro hac vice*)
New York Bar No. 4450953
MOYLES IP, LLC
One Enterprise Drive, Suite 428
Shelton, CT 06484
Telephone: (203) 428-4420
Email: lmoyles@moylesip.com
Email: jrockman@moylesip.com

*Attorneys for Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record through the Court's CM/ECF service on this 2nd day of April, 2021.

*/s/   Eric H. Findlay*_____

Eric H. Findlay