IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| DYNAENERGETICS EUROPE GMBH and DYNAENERGETICS U.S., INC., <br>     *Plaintiffs*, <br> v. <br><br> YELLOW JACKET OIL TOOLS, LLC and G&H DIVERSIFIED MANUFACTURING, LP <br>     *Defendants.* | § § § § § § § § § § § §      6:20-CV-01110-ADA |

## ORDER GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE OR TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a).

On for consideration is Defendants Yellow Jacket Oil Tools, LLC (hereinafter "Yellow Jacket") & G&H Diversified Manufacturing, LP (hereinafter "G&H") Motion to Dismiss or Transfer filed on January 29, 2021. ECF No. 16. In response to the Motion, on February 12, 2021, DynaEnergetics Europe and DynaEnergetics U.S., Inc. ("DynaEnergetics") amended their complaint to include G&H. ECF No. 17. On March 19, 2021, G&H filed a motion to dismiss claims or, alternatively, to transfer to the SDTX. ECF No. 24. Plaintiffs DynaEnergetics filed a response to the Motions on April 2, 2021. ECF No. 26. After considering all relevant information, the Court is of the opinion that the Motion to Dismiss by Yellow Jacket and G&H for improper venue should be **DENIED** and the Motion to Transfer should be **GRANTED IN PART AND DENIED IN PART**.

### FACTUAL BACKGROUND

On December 4th, 2020, Plaintiffs DynaEnergetics filed the complaint for patent infringement against Yellow Jacket for the alleged violation of U.S. Patent No. 10,844,697

1

("Patent 697") through Yellow Jacket's involvement with the "Yellow Jacket Perforating Gun." ECF No. 1. In the complaint, DynaEnergetics stated that Yellow Jacket manufactured and sold the Perforating Gun while owning a building in Odessa, TX creating a regular and established place of business in WDTX, and making venue proper in this District. *Id*. Yellow Jacket responded to DynaEnergetics' complaint with a Motion to Dismiss, stating that despite similarities in namesake, Yellow Jacket is a holding company that does not conduct business operations, generate revenue, own property, have employees, nor manufacture or sell products. ECF No. 16, 24. Yellow Jacket explained that everything initially put forth by DynaEnergetics to support venue against Yellow Jacket was instead attributable to G&H. *Id.* This includes production, manufacturing, advertising, selling, and ownership over the building in Odessa. *Id.* Therefore, Yellow Jacket claims that venue is improper for them in the Western District. *Id.* DynaEnergetics responded that Yellow Jacket should be held as an alter ego of G&H due to possessing the same executives in both companies, presenting themselves to the public as Yellow Jacket, being wholly owned by G&H, and being completely under the control of G&H. ECF No. 26. DynaEnergetics highlights specifically a building labeled Yellow Jacket Oil Tools, a websitelabeled as Yellow Jacket Oil Tools whose copyright reads "@ 2019 Yellow Jacket Tools, A division of G&H Diversified Manufacturing." [1]  ECF No. 24, 26.

  G&H is headquartered in the Southern District. G&H's likely witnesses with knowledge relevant to this case — John Kaiser, Ben Knight and Ryan Ward, as well as all of G&H's executives —  are in Houston along with documents relevant to this case. ECF No. 24. Defendant argues that prior art witnesses will likely be present in the Houston area as well. *Id.*

---

[1] Yellow Jacket Oil Tools, © 2019 Yellow Jacket Oil Tools. https://www.yjoiltools.com (last visited Aug. 1st, 2021).

There are three pending cases involving the '697 Patent in the Western District and two in the Southern district. ECF No. 24, 26.

## STANDARD OF REVIEW

**I. Alter Ego Standard and the Traditional Factors of an Alter Ego Claim.**

"[T]he alter ego doctrine is an equitable remedy which prevents a company from avoiding liability by abusing the corporate form." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999). "The Court is hesitant to allow plaintiffs to manufacture proper venue through the use of an equitable remedy." *Nat'l Steel Car Ltd. v. Greenbrier Cos.*, No. 6:19-cv-00721-ADA, 2020 U.S. Dist. LEXIS 132270, at *7 (W.D. Tex. July 27, 2020). "Because the alter ego issue is not unique to patent law, . . . court[s] appl[y] the law of the regional circuit." *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1380 (Fed. Cir. 2004).

In the 5th circuit, the most inclusive list of factors for determining an alter ego relationship follows:

> "(1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations. (8) daily operations of the companies are kept separate; (9) parties with whom the companies come into contact are apprised of the companies' separate identities; (10) the companies share offices, employees, or financing; (11) one company pays wages to the other company's employees; (12) the employees of one corporation render services on behalf of the other corporation; (13) the companies file separate tax returns: (14) common business names; (15) the subsidiary operates with grossly inadequate capital; (16) the subsidiary receives no business except that given to it by the parent; (17) the parent caused the incorporation of the subsidiary; and (18) the corporations share property." *Wilco Marsh Buggies & Draglines v. Eik Eng'g Sdn*, No. 6-19-CV-00565-ADA, 2020 U.S. Dist. LEXIS 196929, at *4-5 (W.D. Tex. Feb. 26, 2020).

Additionally, "a corporation may be deemed the alter ego of an individual if the corporation is . . . undercapitalized . . . pays no dividends, is insolvent, lacks corporate records,

or is merely a façade." *McCall Stock Farms v. United States*, 14 F.3d 1562, 1569 (Fed. Cir. 1993). However, clear evidence must be presented to blur the line between corporations. "[Plaintiff] must do more than provide a prima facie showing, but rather [plaintiff] must rebut the presumption of institutional independence with clear evidence." *Nat'l Steel Car Ltd. v. Greenbrier Cos.*, No. 6:19-cv-00721-ADA, at *7. "To impute the property of a subsidiary to the defendant under an alter ego theory, the lines between the defendant and the subsidiary must become so blurred that the two become one." *Id.* at 5. Despite the numerous factors, "there is no litmus test for determining whether a subsidiary is the alter ego of its parent." *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 694 (5th Cir. 1985). Ultimately "[r]esolution of the alter ego issue is heavily fact-specific and, as such, is peculiarly within the province of the trial court." *Id.*

### II. Improper Venue Under 28 U.S.C. § 1400.

Unlike under the rules of Civil Procedure, venue for the district in a patent case must be proper for every defendant. *Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 563-64 (1942). 28 U.S.C. §1400(b) is "the exclusive provision controlling venue in patent infringement proceedings." *Id.* "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C.S. §1400(b). Residency in this statute is determined by the judicial district containing the primary place of business or location of its registered office. *In re BigCommerce, Inc.,* 890 F.3d 978, 986 (Fed. Cir. 2018).

If a defendant is not incorporated in a district or, in other words, does not reside there, determination of proper venue turns to whether the defendant has "committed acts of infringement and has a regular and established place of business" in the district. 28 U.S.C.S. §1400(b). The three factors determining proper venue in a district are: (1) if the plaintiff proves

there is a "physical place in the district", (2) if it is a "regular and established place of business", and (3) if it is "the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

"If venue is improper, the Court has broad discretion to dismiss the case, or in the interest of justice, transfer the case to any district where venue is proper." *Precis Grp., LLC v. TracFone Wireless, Inc.*, No. 6-20-CV-00303-ADA, 2021 U.S. Dist. LEXIS 45644, at *4 (W.D. Tex. Mar. 11, 2021).

### III. Motion to Dismiss under 28 U.S.C. § 1406.

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 USCS § 1406.

### IV. Convenience Transfer under 28 U.S.C. § 1404

"[T]he entire premise of a § 1404(a) transfer motion is that a case, *although brought in a proper venue*, should nevertheless be transferred for the convenience of the parties." *In re Apple Inc.*, 979 F.3d 1332, 1346 (Fed. Cir. 2020) "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.S. §1404(a).

The convenience element relies on both private and public interest factors. Private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). Public factors include: "(1) the administrative difficulties flowing

from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *In re Volkswagen AG*, 371 F.3d at 203.

Defendant has a burden of demonstrating that a transferee venue is clearly more convenient. *In re Apple Inc.*, 979 F.3d at 1340.

## ANALYSIS

**I. Yellow Jacket's Motion to Transfer to Southern District is granted because they are not an alter ego of G&H.**

The alter ego claim fails to show Yellow Jacket is an alter ego of G&H. Further, venue is improper in the Western District because Yellow Jacket does not have residency in the Western District, a principal place of business in the Western District, nor transacts in the Western District. Thus, venue is proper in the Southern District where Yellow Jacket is a resident.

**a. Yellow Jacket is not an alter ego of G&H.**

An analysis of alter ego considers several 5th Circuit factors . The Court weighs the totality of the factors and evidence provided and determines Yellow Jacket is not an alter ego of G&H.

The following factors were the most applicable in the determination of an alter ego relationship between Yellow Jacket and G&H: (1) the amount of stock owned by the parent of the subsidiary; (2) if there are separate headquarters for the two corporations; (3) if the corporations have common officers and directors; (4) if they observe corporate formalities; (5) if they maintain separate accounting systems; (10) if companies share offices, employees, or financing; (14) if they have common business names; (18) and if the corporations share property. *Wilco Marsh Buggies & Draglines v. Eik Eng'g Sdn*, No. 6-19-CV-00565-ADA at *4-5.

Yellow Jacket and G&H share executives as well as headquarters which inform factors 2, 3, 10, and 18. Yellow Jacket is wholly owned by G&H and G&H is the sole member of Yellow Jacket. ECF No. 26. Yellow Jacket does not conduct any business, possess, or maintain financial records, produce revenue, or have any employees. *Id.* Because Yellow Jacket lacks employees and financial records, it is on its face difficult to show Yellow Jacket possesses corporate formalities which would render it an individual company from G&H. However, many of these traits are common for a holding company.

Intermingling of finances indicates an alter ego relationship. *See 3M v. Eco Chem, Inc.*, 757 F.2d 1256, 1262 (Fed. Cir. 1985). Yellow Jacket does not have a separate accounting system, however, Yellow Jacket is not sharing an account with G&H. ECF No.24 & 26. Rather, Yellow Jacket has no financial record of their own due to not conducting business operations. *Id.* While there are not separate accounting systems, there are simultaneously not intermingled financial accounts between these companies. Furthering the importance of financial separation, "Undercapitalization is often a critical factor in alter ego analysis." *Nat'l Steel Car Ltd. v. Greenbrier Cos.*, No. 6:19-cv-00721-ADA, at *9. "When there is scant evidence that the subsidiary would be unable to pay a judgment, it weighs heavily against a finding of alter ego status." *Id.* There is scant — rather no evidence — that G&H would be unable to pay a judgment if they were found guilty of patent infringement. ECF. 24.

Lastly, G&H is the owner of the Yellow Jacket trademark. ECF No 26. Application of a company's name on inventory owned by the other can be an indication of alter ego. *3M v. Eco Chem, Inc.,* 757 F.2d at 1262.

While there are factors supporting an alter ego condition for G&H and Yellow Jacket, it is insufficient to overcome the presumed separation and substantial burden necessary to prove

alter ego of the two companies. *See Interactive Toybox LLC v. Walt Disney Co.,* 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018). While murky corporate structure has been indicated, no evidence of fraud or malfeasance has been shown against Yellow Jacket and G&H. ECF No. 24, 26. Possessing solely shared employees, maintaining the exact same address as a principal place of business, and using one corporation as a marketing name for the other can be adequate to determine existence of an alter ego relationship. *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:16-CV-00033-RWS, 2017 U.S. Dist. LEXIS 172712, at *20-21 (E.D. Tex. Aug. 1, 2017). However, the alter ego relationship in *Tinnus* had the revenue going to the parent corporation while the subsidiary sold the infringing product online. *Id.* In this case G&H both receives the revenue and operates the Yellow Jacket website. ECF No.24.

The commonly cited factors lack clear evidence that Yellow Jacket and G&H have an alter ego relationship. The status of Yellow Jacket as a holding company and the distinct lack of financial reliance between Yellow Jacket & G&H provides evidence that the two are separate corporate entities. Although there are factors and evidence that could support an alter ego claim, the evidence is inadequate to blur the presumed separation of Yellow Jacket and G&H.

    **b. Inclusion of Yellow Jacket does not meet the venue requirements of 28 U.S.C §1400(b), prompting a 28 U.S.C §1406 transfer.**

For both Yellow Jacket and G&H, Houston is their primary place of business and contains the locations that most closely resembles a registered office. ECF No. 24. Therefore, neither Defendant resides in the Western District. Reliance on proper venue for WDTX hinges on whether "the defendants [have] committed acts of infringement and [have] a regular and established place of business." 28 U.S.C.S. §1400(b).

Without the alter ego claim, venue is improper for Yellow Jacket in the Western District. There is no indicated infringement in the Western District by Yellow Jacket, and they have no

regular and established place of business in the Western District. ECF 16, 24. This fails the standard set forth in 28 U.S.C §1400(b). "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 USCS § 1406. Therefore, in the interest of justice, transfer to a proper venue is necessary for Yellow Jacket.

The Southern District meets the venue requirements of 28 U.S.C §1400(b) for Yellow Jacket. "Any civil action for patent infringement may be brought in the judicial district where the defendant resides." 28 U.S.C §1400(b). "Residency in this statute is determined by the judicial district containing the primary place of business or location of its registered office." *In re BigCommerce, Inc.,* 890 F.3d 978, 986 (Fed. Cir. 2018). Yellow Jacket has admitted their closest thing to a registered office is in Houston, and they are seeking a transfer to the Southern District. ECF No. 24. Therefore, venue is **TRANSFERRED** to the Southern District for Yellow Jacket if DynaEnergetics wishes to pursue the case against Yellow Jacket. With proper venue provided in the Southern District for Yellow Jacket and a transfer adequately rectifying the issue, dismissal for improper venue is **DENIED.**

## II. G&H's Motion to Dismiss under 12(b)(3) and Motion to Transfer are both DENIED because venue is proper and convenience factors favor retention in the WDTX.

The motion to dismiss claims against G&H for infringement of the '697 Patent is **DENIED**. Defendant G&H has "committed acts of infringement and has a regular and established place of business". U.S.C.S. §1400(b). The three factors in determining this test are: (1) if the plaintiff proves there is a "physical place in the district", (2) if it is a "regular and established place of business", and (3) if it is "the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

G&H has personally admitted to operating the Yellow Jacket distribution warehouse out of Odessa, TX and has affirmatively stated that they manufacture and sell the perforating gun in question. ECF No. 24. Further, according to their website, G&H advertises and distributes their products in the Western District through the Odessa office. ECF No. 26. This is clear evidence of alleged infringement and a regular and established physical place in the Western District by defendant G&H, making venue proper in WDTX. *Id.*

### a. 28 U.S.C.S. §1404(a) convenience transfer factors favor retention in the WDTX.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.S. § 1404(a). After weighing public and private factors under §1404(a), the SDTX is not clearly more convenient and G&H's Motion for Transfer is **DENIED.**

### i. Private Factors are not Compelling for a Convenience Transfer.

The private factors are not decidedly in favor of, nor against, a Motion to Transfer for convenience. Private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d at 203.

### 1. Ease of Access to Sources of Proof Favors Transfer.

"[T]he first private interest factor . . . relates to the ease of access to non-witness evidence, such as documents and other physical evidence." *Id.* "[T]he sources of proof requirement is a meaningful factor in the analysis." *In re Volkswagen of Am., Inc.*, 545 F.3d at 316. "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Id.* "However, this

factor may be accorded less weight if the documents are in, or can be converted into easily-transportable electronic form. *E. Tex. Boot Co., LLC v. Nike, Inc.*, No. 2:16-CV-0290-JRG-RSP, 2017 U.S. Dist. LEXIS 166701, at *7 (E.D. Tex. Feb. 15, 2017). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d at 1345.

Documents for G&H are stored in their Houston headquarters. ECF No. 24. Less weight is afforded to this factor in the modern era due to electronic filing, however, this factor still holds weight. *See In re Volkswagen of Am., Inc.*, 545 F.3d at 316. Alternatively, the warehouse in Odessa could also be a source of documents and physical evidence for this case. ECF No. 26. Documents and physical evidence for DynaEnergetics are in the WDTX. *Id*. The bulk of relevant evidence usually comes from the accused infringer, therefore, this factor is slightly in favor of transfer to the SDTX. *In re Genentech, Inc.*, 566 F.3d at 1345.

### 2. Availability of Compulsory Process Factor is Neutral.

"[A] court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person,"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." *Precis Grp., LLC v. TracFone Wireless, Inc.*, No. 6-20-CV-00303-ADA, at *16. "It is highly unlikely that prior art inventors will testify at trial, therefore, the weight afforded their presence in the transfer analysis will be minimal." *E. Tex. Boot Co., LLC v. Nike, Inc.*, No. 2:16-CV-0290-JRG-RSP at *13.

"When no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor." *Duha v. Agrium, Inc.*, 448 F.3d 867, 877

(6th Cir. 2006). There has not been a strong showing of any witness's unwillingness to travel or testify. Stating that prior art witnesses could potentially testify is also a weak argument. In the Court's decades of trial experience, the Court has never seen a prior art witness testify live. As such, the Court considers this both highly unlikely and offered simply alter the § 1404 analysis. Accordingly, the Court places almost no weight on these witnesses." This factor is neutral.

### 3. Cost of Attendance for Willing Witnesses is Neutral.

"[T]he third private interest factor—the cost of attendance for willing witnesses—relates to the convenience of each forum to witnesses." *In re Volkswagen of Am., Inc.*, 545 F.3d at 316. The Fifth Circuit uses the 100-mile rule for this factor. *In re Apple Inc.*, 979 F.3d at 1341. To elaborate, the 100-mile rule is "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 204-05). The 100-mile rule should not be applied too rigidly when individuals will be transferring a long distance that will require an extended stay. *In re Apple Inc.*, 979 F.3d at 1342.

Both parties have indicated party employees will be attending trial. "Party witnesses almost invariably attend trial willingly". *Id.* Additionally, travel of executives from Germany for DynaEnergetics are of minor concern as both venues will require an extended stay. *See In re Apple Inc.*, 979 F.3d at 1342. Travel distance is also minimally different between the two proposed venues. ECF No.26. Both parties expect predominantly employee witnesses coming from either Waco or Houston and the distance is largely negligible for travel, therefore, the cost of attendance for willing witnesses is neutral. ECF No. 24, 26.

### 4. All Other Practical Problems

The fourth private interest factor of all other practical problems considers "significant steps" taken by the court on the case only prior to filing a Motion to Dismiss or a Motion to Transfer. *See In re Apple Inc.*, 979 F.3d at 1343. Vitally, "once a party files a transfer motion, disposition of that motion should take top priority in the case." *Id.* A key distinction is that a difference in the number of pending cases in each court is alone insufficient to differentiate in how expeditiously the current case might be handled. *Id.* Also, pending cases in the current or proposed venue are a factor for transfer if they have overlapping issues. *Id.* at 1344. Transfer of the case against Yellow Jacket to the SDTX could provide support to G&H also being transferred with potentially overlapping issues. *See In re Apple Inc.*, 979 F.3d at 1342. However, as was identified in the alter ego analysis, these are separate corporations which can sit as separate defendants in separate districts. Thus, this factor is neutral.

### ii. Public Factors Favor Denying Motion to Transfer for Convenience.

The Court turns to the public factors that are useful in determining a convenience transfer: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *In re Volkswagen AG*, 371 F.3d at 203.

### 1. Administration difficulties factor favors retention in the WDTX.

"[A] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *Id.* at 1344. "[A] district court cannot merely set an aggressive trial date and subsequently conclude, on that basis alone, that other forums that historically do not resolve cases at such an aggressive pace are more congested for venue transfer purposes." *Id.* However,

13

with an understanding that this factor carries a reduced weight due to its speculative nature, the Court may consider how quickly a case will come to trial and be resolved when applying the transfer for convenience analysis. *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

"Patent cases filed in the WDTX over the last two-and-a-half years get to trial in a little less than two years . . . the time to trial for patent cases in the SDTX is a little less than three years." ECF No. 24. The WDTX has a prior history of resolving patent cases more rapidly than the SDTX. *Id.* While this factor has a reduced weight due to its speculative nature, it is in favor of retaining venue in the WDTX.

## 2. Local Interest Factor favors retention in the WDTX

Local interest is valued as jurors should not be burdened with the litigation of a case which has no relation to the community. *Precis Grp., LLC v. TracFone Wireless, Inc.*, No. 6-20-CV-00303-ADA at *21. "[The local interest factor] most notably regards not merely the parties' significant connections to each forum writ large, but rather the "significant connections between a particular venue and *the events that gave rise to a suit*."" *In re Apple Inc.*, 979 F.3d at 1345.

A majority of '697 patent cases from DynaEnergetics are set in the WDTX, however, others are still being tried elsewhere in the state. ECF. 24,26. DynaEnergetics manufactures and assembles all competing DynaStage products in the WDTX. ECF No. 26. Customers use DynaEnergetics' products and the infringing products in the Permian Basin. *Id.* "In FY2020, out of approximately DynaEnergetics' $146 million in total revenue, over $100 million was directly tied to products made in the Western District, and sold to the Western District or deployed to drilling sites in the Western District." *Id.* The harm and financial impacts from the alleged infringement are primarily felt in the WDTX, which is also a consideration*. See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008). There are significant connections between the

WDTX and the events which gave rise to the suit. Thus, this factor weighs in favor of retaining the case in the WDTX.

### 3. Public factors three and four are not in dispute.

Public factors three and four have not been disputed by the parties. Therefore, several public factors favor retention in the WDTX and minimal to no support is provided in favor of transfer to the SDTX.

### iii. Summary for Denial of 28 U.S.C. § 1404(a) Convenience Transfer.

The balance of the *Volkswagen* factors do not provide clear and convincing support — the necessary standard for a convenience transfer — for a § 1404(a) convenience transfer of the case to the SDTX. While some factors like the location of information favor transfer, "a factor can favor transfer even if that factor is, standing alone, insufficient to warrant transfer." *In re Apple Inc.*, 979 F.3d at 1340. Therefore, a § 1404(a) transfer due to convenience is **DENIED**.

## CONCLUSION

In sum, Yellow Jacket is not in an alter ego relationship with G&H and the two stand as separate corporations. As a result, venue is improper against Yellow Jacket in the WDTX as they fail to meet the venue requirements of 28 U.S.C. §1400. With venue improper against Yellow Jacket, the case must be dismissed or transferred according to 28 USCS § 1406. Venue is proper for Yellow Jacket the SDTX, therefore, the case against Yellow Jacket is hereby **TRANSFERRED** to the SDTX.

Venue is proper against G&H as they met the requirements of 28 U.S.C. §1400(b). Additionally, a convenience transfer under 28 U.S.C. § 1404(a) is **DENIED** as factors do not support a transfer. Accordingly, the case against G&H will remain in the WDTX in this Division.

**SIGNED** this 5th day of August, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE