# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| DYNAENERGETICS EUROPE GMBH, and DYNAENERGETICS US, INC., <br><br> Plaintiffs, <br><br> v. <br><br> G&H DIVERSIFIED MANUFACTURING, LP <br><br> Defendant. | Civil Action No: 6:20-cv-01110-ADA |

**DYNAENERGETICS EUROPE GMBH AND DYNAENERGETICS US, INC.'S
<u>SUR-REPLY CLAIM CONSTRUCTION BRIEF</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. "tandem seal adapter" (asserted claims 1 and 8) ..................................................... 2

    B. "connected to" (asserted claim 1) ............................................................................ 5

    C. "first end" / "second end" (asserted claim 1) .......................................................... 6

    D. "pin connector assembly" (asserted claim 1) .......................................................... 7

    E. "first pin connector end" / "second pin connector end" (asserted claims 1 and 2) ................................................................................................................. 8

    F. "it is not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end" ..................................................... 9

III. Conclusion ..................................................................................................................... 10

Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc. (collectively, "DynaEnergetics") submit this Sur-Reply Claim Construction Brief in support of their proposed construction for a disputed term of U.S. Patent No. 10,844,697 (the "'697 Patent") as well as addressing terms that Defendant G&H Diversified Manufacturing LP ("G&H") has proposed for construction.

## I. INTRODUCTION

In its effort to limit claim scope to suit its noninfringement and invalidity positions, G&H continues to repeatedly point to a statement made by DynaEnergetics' expert for a single disputed term, "tandem seal adapter," from a related patent in a different litigation[1] to somehow justify that *all* of its proposed constructions are correct. But in that same litigation—even accounting for DynaEnergetics' expert's statement that "tandem seal adapter" is not a common industry term—Judge Lake agreed with DynaEnergetics and recognized that the term "tandem seal adapter" does not need construction. Ex. L, *DynaEnergetics Europe GmbH et al v. Hunting Titan, Inc.*, No. CV H-20-2123, 2021 WL 5494932, at *8 (S.D. Tex. Nov. 23, 2021) (the "'938 Patent Markman Decision") ("After carefully considering the parties' arguments and the applicable law, the court concludes that the term 'tandem seal adapter' is subject only to its plain and ordinary meaning, which needs no further construction."). That determination is even more appropriate here because, as noted in the Responsive Claim Construction Brief ("Responsive Brief") (Dkt. 56 at 9), the characteristics of the "tandem seal adapter" as used in the claims of the '697 Patent are even *more* expressly defined by the claim terms than in the '938 Patent claims, which provides definitive support for affording the term its plain and ordinary meaning.

Furthermore, the various '697 Patent defendants revised their proposed constructions mid-

---

[1] U.S. Patent No. 10,472,938 (the "'938 Patent") asserted in *DynaEnergetics Europe GmbH et al v. Hunting Titan, Inc.*, Civil Action No. 4:20-cv-02123 (S.D. Tex.) (the "'938 Patent Litigation").

way through the claim construction *briefing* (not prior to submission of the JCCS) ostensibly in order to "harmonize" their proposed constructions. Putting aside the impropriety of such a belated revision, the fact that defendants could not (and for some terms, still do not) agree on a single construction for the disputed claim terms demonstrates the weakness of their positions. As the Southern District of Texas recognized for the '938 Patent,[2] the '697 Patent does not use highly technical language or terms of art that would be difficult for a lay jury to understand. The claims utilize little, if any, technical jargon and are written in plain English. Yet G&H and the other defendants propose to construe a large number of terms, and they present complicated interpretations in an effort to aid their own non-infringement and invalidity theories, not to help the jury or this Court. For the single term that DynaEnergetics proposes for construction, "connected to," DynaEnergetics is forced to propose a construction that is consistent with how a POSITA would understand the intrinsic record because of these defendants' attempt to improperly stretch the scope of the prior art to fit their invalidity position.

The Court should reject G&H's and the other defendants' unnecessary and incorrect claim construction proposals and should give the disputed claim terms their plain and ordinary meanings.

II.   **ARGUMENT**

   **A. "tandem seal adapter" (asserted claims 1 and 8)**

As does related defendant NexTier, G&H ironically invokes a "500-pound gorilla in the room" in an effort to support its position (Dkt. 59 at 1), but now must ignore a 1000-pound one to maintain its position. G&H argues that "the term cannot be given its plain and ordinary meaning" —but Judge Lake in the Southern District of Texas has done exactly that, for the same term, in a

---

[2] The '697 Patent is a continuation from the '938 Patent and shares the same specification. In the '938 Patent Markman Decision, the court found that all of the disputed terms were subject to their plain and ordinary meaning and no construction was required.

case involving the '938 Patent, which G&H relied upon heavily. In fact, G&H goes so far as to argue that the meanings in the '938 Patent and '697 Patent of the term *must* be the same. *Id.* at 2-3. Simply put, G&H's goose (or gorilla?) is cooked.

"[T]he words 'tandem,' 'seal,' and 'adapter' are 'simple English words whose meaning is clear and unquestionable' and require no further construction." '938 Patent Markman Decision, 2021 WL 5494932, at *8 (citing *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373 (Fed. Cir. 2004)). As G&H points out, "with respect to the '697 Patent, the term 'tandem seal adapter' is used in the same manner as the '938 Patent and enjoys the same meaning." Dkt. 59 at 3 (citation and quotations omitted). Plain and ordinary meaning is even more appropriate for the term "tandem seal adapter" as it appears in the '697 Patent, which has clear claim language that expressly defines the structure (first end, second end, bore) and configuration (connected to the first outer gun carrier, configured to provide a seal between the first detonator and an environment on the second end) of the claimed tandem seal adapter. '697 Patent at 11:21-47; *see also* Dkt. 56-3 ¶¶ 59-60, 66. Accordingly, consistent with the '938 Patent Markman Decision and with G&H's own insistence that "tandem seal adapter" should be treated the same in the '697 Patent as the '938 Patent, no construction is needed for "tandem seal adapter."

G&H continues to insist upon exactly what the Federal Circuit has "repeatedly warned against," proposing to confine "tandem seal adapter" to exemplary embodiments in the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc); *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). G&H does not even dispute that it is attempting to impose additional limitations from the embodiments into its proposed construction, requiring "*two* gun carriers/tools that are *directly attached to each other*." Instead, G&H argues that because the phrase "tandem seal adapter" as a whole is not a term of art,

3

the Court may import limitations from the specification. Not so, and G&H's citation to *Irdeto* and *Indacon* do not overcome that bedrock principle. The Federal Circuit has held that even if a claim term has no ordinary meaning it should not, based solely on that fact, be restrictively construed. *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1336–37 (Fed. Cir. 2005) (holding that even though "[t]he record shows that the term 'executable application' does not have a customary meaning in the computer science field[,] . . . the district court **appropriately declined to impose a sharp limitation on its scope**," particularly when "the specification repeatedly indicates that the preferred embodiment is only one possibility for practice of the invention.") (emphasis added). As explained by DynaEnergetics' expert, a POSITA would recognize that tandem seal adapter acts as a type of a sub, which Defendants admit has an established meaning in the art. Dkt. 56-3 ¶¶ 62-67. Even in cases where a claim limitation recites an uncommon phrase, the Federal Circuit has held that the plain meaning of each word should be individually applied as the first step in construing the phrase. *See Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369, 1372 (Fed. Cir. 2003) ("[S]imply because a phrase as a whole lacks a common meaning does not compel a court to abandon its quest for a common meaning and disregard the established meanings of the individual words."); *see also Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1359 (Fed. Cir. 2016).

    The defendant in the '938 Patent Litigation similarly attempted to construe "tandem seal adapter" in a way that imposed additional limitations, but the Southern District of Texas court recognized that the constituent words of the term were readily understandable and "adopting Defendant's construction will not clarify a disputed term but, instead, will change the scope of the patented claims." '938 Patent Markman Decision, 2021 WL 5494932, at *8. For the same reason, this Court should reject G&H's (and the other defendants') proposed construction that imposes limitations not present in the claims and instead hold that "tandem seal adapter" is subject to its

plain and ordinary meaning.

### B. "connected to" (asserted claim 1)

While DynaEnergetics acknowledges that the plain and ordinary meaning of the term "connected to" may appear readily understandable to a lay jury, DynaEnergetics is forced to propose this specific claim construction for "connected to," based on the defendants' attempt to stretch a prior art reference to suit their invalidity positions. Specifically, G&H and other defendants have relied upon prior art references in which a component was merely held or positioned between two other components, without any physical connection or formation of a seal, and argued that such an arrangement satisfied the "connected to" limitation. Ex. M, G&H Preliminary Invalidity Contentions, at 14; Dkt. 58-8 at 43. As explained in DynaEnergetics' Responsive Claim Construction Brief ("Responsive Brief"), a POSITA would understand that the claimed tandem seal adapter needs to be "connected to" the first outer gun carrier in a manner that is *sufficiently secure* as to provide a seal between an interior of the first outer gun carrier (*i.e.*, as recited by claim 1, "the first detonator [is] positioned within the first outer gun carrier") and the second end of the tandem seal adapter. *See* Dkt. 56 at 9-11 (citing Dkt. 56-3 ¶¶ 71-72).

Furthermore, though G&H points to portions of the specification unrelated to the claimed tandem seal adapter "connected to" the outer gun carrier but discussing how one end of another part may "abut[]/connect[] to" another, the actual claim language shows that the term "connected to" should be understood to be a more secure coupling than something that is merely touching or "abutting," which is used in claim 19 to refer to "a biasing member positioned within the pressure bulkhead and *abutting* the pin head portion of the inner contact pin." '697 Patent at 14:6-8; *Digit. Retail Apps, Inc. v. H-E-B, LP*, No. 6-19-CV-00167-ADA, 2020 WL 376664, at *8 (W.D. Tex. Jan. 23, 2020) ("[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms."

5

(alteration in original) (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004))). A POSITA would recognize that the term "connected to" is used in reference to a sufficiently secure connection between the tandem seal adapter and the first outer gun carrier to form a seal, whereas the term "abutting" is used by the patent when referring to something that simply needs to touch or fit together.

Thus in the context of the '697 Patent, a POSITA would understand the term "connected to" to mean "joined or coupled in a manner that resists separation and not merely by physical contact" and accordingly, the Court should adopt DynaEnergetics' position.

### C. "first end" / "second end" (asserted claim 1)

Instead of offering any substantive rebuttal to DynaEnergetics' arguments that defendants' proposed construction "[first/second] farthest or most extreme part or point" makes no sense in the context of the claims and only introduces confusion and ambiguity, G&H simply asserts that "Defendant's construction conveys the terms' plain and ordinary meaning." For the same reasons expressed in DynaEnergetics' Responsive Brief (Dkt. 56 at 11-14), this is simply not so. First, though the '697 Patent claims require that the first outer gun carrier be "connected to the *first end* of the tandem seal adapter," G&H failed to explain how an outer gun carrier would be able to connect to the "farthest or most extreme part or point" of the tandem seal adapter. *See id.* at 12. Second, though G&H mentions the prosecution history, G&H failed to actually show that there was any "clear and unmistakable" disavowal of claim scope with respect to this term that would limit the plain and ordinary meaning of "end" to their proposed construction. *See Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008). Finally, G&H and defendants failed to address the fact that the adjective "farthest or most extreme part or point," immediately after the terms "first" and "second" adds needless confusion to a jury. Referring to the "first farthest" and "second farthest" part or point could be understood to refer to elements on the same end of the

6

tandem seal adapter instead of the opposite ends. Dkt. 56-3 ¶ 77. Accordingly, the Court should reject G&H's proposed construction and instead hold that "first end" and "second end" is subject to its plain and ordinary meaning.

### D. "pin connector assembly" (asserted claim 1)

G&H attempts to frame the "core dispute between the parties is whether an 'assembly' requires a plurality of parts that are fitted together (as argued by defendants), or whether an 'assembly' includes a single solid pin connector." Dkt. 59 at 8. But this is not true. The core dispute is whether G&H has shown that DynaEnergetics clearly and unambiguously disclaimed or disavowed claim scope in the specification, such that the plain and ordinary meaning of "pin connector assembly" should be limited to G&H's proposed construction. *See Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("There are only two exceptions to this general rule [that terms should be given their plain and ordinary meaning]: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.").

On that front, G&H falls far short of what the law requires. Indeed, G&H provides no analysis of any disavowal or disclaimer from DynaEnergetics to support why "pin connector assembly" should be construed to include the additional limitations imposed in G&H's proposed construction. Instead, G&H focuses on the disclosures in specific embodiments of the '697 Patent disclose in order to import those limitations into the claims.[3] This is inadequate as a matter of law. *Altiris*, 318 F.3d at 1369, 1372 (describing a "'heavy presumption' that claim terms carry their ordinary meaning as viewed by one of ordinary skill in the art" and noting that "merely because

---

[3] G&H provides a number of "Enhanced" illustrations of the embodiments in order to argue that the specification only discloses one type of pin connector assembly. Setting aside the fact that this argument is inadequate as a matter of law, G&H mischaracterizes the disclosure in Fig. 19, which shows a pin connector assembly comprising a single solid pin connector.

the specification only describes one embodiment is not a sufficient reason to limit the claims to that embodiment").

Furthermore, G&H fails to rebut DynaEnergetics' argument that G&H's proposed construction includes additional language that is unduly limiting and redundant, requiring the "plurality of parts" to be "fitted together" in order "to form a component with pins" that is "electrically connecting" either "two guns or tools." Indeed, G&H attempts to draw focus away from the fact that G&H's proposed construction again tries to impose a limitation that "***two*** guns or tools" are somehow required in the pin connector assembly, when the claim language imposes no such requirement. These additional limitations and redundant terms in G&H's proposed construction are both improper and unnecessarily confusing, and G&H has shown no disclaimer or disavowal of claim scope that would constitute a legitimate basis for imposing these limitations into the construction of "pin connector assembly." Accordingly, the Court should reject defendants' proposed construction and instead hold that "pin connector assembly" is subject to its plain and ordinary meaning.

### E.  "first pin connector end" / "second pin connector end" (asserted claims 1 and 2)

G&H provides absolutely no rebuttal to DynaEnergetics' arguments explaining why no construction is needed, other than to blithely state that its proposed construction is "neither circular nor redundant." Dkt. 59 at 9. Though G&H asserts that "it appears that the parties do not actually dispute the plain and ordinary meaning of this term," *id.*, the fact that G&H still insists that this term requires construction implies that G&H seeks to create opportunities for gamesmanship in applying its claim construction for invalidity or non-infringement. *See Motorola, Inc. v. VTech Commc'ns, Inc.*, No. 5:07CV171, 2009 WL 2026317, at *8 (E.D. Tex. July 6, 2009) ("[W]here additional language may be unduly limiting, confusing, or redundant, it is in a court's power to determine that no construction is necessary."). For the same reasons presented in DynaEnergetics'

Responsive Brief (Dkt. 56 at 18), the Court should reject defendants' proposed construction and instead hold that "first pin connector end" and "second pin connector end" are subject to their plain and ordinary meanings.

### F. "it is not possible to interrupt the electrical signal from the first pin connector end to the second pin connector end"

As DynaEnergetics intends to show the Patent Office in its Patent Owner Reply[4] and as DynaEnergetics explained in its Responsive Brief, the specification and figures of the '697 Patent describe and show the claimed subject matter more than sufficiently to enable a POSITA to make and use this more robust wireless assembly without undue experimentation, with an understanding that the invention of claim 2 relates to the elimination of wired connections and associated interruptions to the wired electrical feedthrough. A POSITA would understand the teaching in the '697 Patent as providing the proper basis and understanding for the limitation "it is not possible to interrupt the electrical signal." *See* Dkt. 56 at 19-20. On the other hand, G&H's argument is based on clearly unrelated notions of whether an interruption absolutely will not occur for any reason during any particular use—i.e., whether "not possible to interrupt" could result in a 100% success rate for performance—while ignoring the clear support for the invention in the claim and specification.

In addition, G&H incorrectly argues that DynaEnergetics has not address indefiniteness for this term. As DynaEnergetics' Responsive Brief addressed, an important and novel aspect of the claimed invention includes the '697 Patent's short, stiff pin connector assembly that is superior to the prior art teachings of wires that are vulnerable to cutting, crimping, or other damage. *Id.* at 19. And as Dr. Rodgers explains in his declaration, a POSITA with the context of the relevant industry knowledge would recognize that the improvements taught by the '697 Patent provide reasonable

---

[4] DynaEnergetics' Patent Owner Response for the PGR2021-00078 is due on February 10, 2022.

certainty about the claimed inventions' scope—which is that it would not be possible to interrupt the electrical signal from the first pin connector end to the second pin connector end in the same manner one could with wired connections, due to the portless tandem seal adapter that does not allow access to the pressure bulkhead and pin connector assembly. *See* Dkt. 56-3 ¶¶ 107-08.

Furthermore, the prosecution history supports that a POSITA would be able to readily understand and determine the scope of this claim term, as well as practice the claimed invention without undue experimentation. In an office action, the examiner alleged that the pin connector assembly disclosed in the Schacherer reference met the claim limitation "wherein it is not possible to interrupt the electrical signal . . . from the first end . . . to the second end . . . of the pressure bulkhead." Dkt. 56-6 at 4. While the patentee eventually overcame this objection, the examiner was clearly able to recognize the definite scope of the functional limitation, "it is not possible to interrupt the electrical signal," evidencing that a POSITA would understand the teaching in the '697 Patent as providing the proper basis and scope for the limitation "it is not possible to interrupt the electrical signal." Accordingly, the limitation is enabled and not indefinite.

### III. CONCLUSION

For the reasons set forth herein, DynaEnergetics respectfully requests that the Court reject G&H's proposed constructions and adopt DynaEnergetics' proposed constructions.

Dated: December 6, 2021

Respectfully submitted,

By: _/s/ Eric H. Findlay_____
Eric H. Findlay
Texas Bar No. 00789886
Roger Brian Craft
Texas Bar No. 04972020
FINDLAY CRAFT P.C.
102 N. College Avenue, Suite 900
Tyler, TX 75702
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

Mark D. Siegmund
Texas Bar No. 24117055
STECKLER WAYNE COCHRAN CHERRY, PLLC
8416 Old Mcgregor Road
Waco, Texas 76712
Telephone: (254) 651-3690
Facsimile: (254) 651-3689
Email: mark@swclaw.com

Barry J. Herman (admitted *pro hac vice*)
Maryland Federal Bar No. 26061
Stephanie M. Nguyen (admitted *pro hac vice*)
DC Bar No. 1046300
Julie C. Giardina (admitted *pro hac vice*)
Maryland Federal Bar No. 21085
WOMBLE BOND DICKINSON (US) LLP
100 Light St, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Email: Barry.Herman@wbd-us.com
Telephone: (410) 545-5873
Email: Stephanie.Nguyen@wbd-us.com
Telephone: (410) 545-5802
Email: Julie.Giardina@wbd-us.com

Preston H. Heard (admitted *pro hac vice*)
Georgia Bar No. 476319
Christine H. Dupriest (admitted *pro hac vice*)
Georgia Bar No. 874494
WOMBLE BOND DICKINSON (US) LLP
271 17th Street, NW, Suite 2400

Atlanta, GA 30363
Telephone: (404) 888-7366
Email: Preston.Heard@wbd-us.com
Telephone: (404) 962-7538
Christine.Dupriest@wbd-us.com

Lisa J. Moyles (admitted *pro hac vice*)
Connecticut State Bar No. 425652
Jason M. Rockman (admitted *pro hac vice*)
New York Bar No. 4450953
MOYLES IP, LLC
One Enterprise Drive, Suite 428
Shelton, CT 06484
Telephone: (203) 428-4420
Email: lmoyles@moylesip.com
Email: jrockman@moylesip.com

***Attorneys for Plaintiffs DynaEnergetics Europe GmbH and DynaEnergetics US, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

/s/ Eric H. Findlay
Eric H. Findlay